JOHN J. BOTHWELL V. STATE OF NEBRASKA.

FILED MAY 5, 1904.   No. 12,656.

1. **Rape: RESPONSIBILITY FOR CRIME.** The generally accepted test of responsibility for crime, is the capacity to understand the nature of the act alleged to be criminal, and the ability to distinguish between right and wrong with respect to such act. *Schwartz v. State*, 65 Neb. 196.

2. **Defense of Moral Insanity.** Moral insanity as a criminal defense is not recognized in this state. One who knows abstractly what is right and what is wrong must, at his peril, choose the right and shun the wrong. He can not yield to a vicious impulse, and allege mere weakness of will as an excuse. *Schwartz v. State*, 65 Neb. 196.

3. ———: INSTRUCTION. An instruction on the question of insanity, in principle substantially the same as one given in *Burgo v. State*, 26 Neb. 639, and approved, *held* not erroneous.

4. **Reasonable Doubt: INSTRUCTION.** Instruction concerning what is a reasonable doubt, *held* not prejudicially erroneous, following *Leisenberg v. State*, 60 Neb. 628.

5. **Nonexpert Witnesses.** Nonexpert witnesses can be permitted to express opinions as to the sanity or insanity of a person only when they have shown other sufficient qualifications, and have stated the facts and circumstances upon which their opinion of mental condition is based. *Lamb v. Lynch*, 56 Neb. 135.

ERROR to the district court from Cherry county: WILLIAM H. WESTOVER, JUDGE.   *Reversed.*

*E. D. Clark* and *Hamer & Hamer,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* contra.

HOLCOMB, C. J.

An information was filed in the trial court, charging the accused with the crime of rape upon his daughter. A plea of not guilty was interposed. Upon this plea, at the trial, it developed that the defense of insanity was relied on by the defendant to escape legal responsibility for the act charged. Upon a trial to the court and a jury of the issue raised by the plea of not guilty, a verdict was returned finding the defendant guilty as charged and, after the overruling of a motion for a new trial, sentence of imprisonment in the penitentiary during the natural life of the defendant was pronounced by the court. The defendant prosecutes error. To establish his defense, testimony as to the defendant's mental condition was introduced, both of an expert and nonexpert character. It is alleged in the petition in error that the verdict is not sustained by the evidence, the contention being that the evidence indisputably establishes the defense of insanity. It is conceded, however, by counsel for defendant that, in order for the court to reach this conclusion, it must establish a new rule as to the test of legal responsibility when insanity is interposed as a defense for an act otherwise criminal. The substance of the contention of counsel is that the defendant's mind was not at the time of the act charged perfectly sound and normal; that he was physically impaired by disease, and that his mental condition was the result of such physical impairment; that he was both a mental and physical wreck, and unable to control his action, and therefore not legally responsible for the act of which he was charged. Counsel say: "We desire

to have this court formulate a rule that shall secure the punishment of those who are strong enough to determine that which is right and that which is wrong, and who are able to choose between the two, but that no one should be punished who is so far mentally impaired as to be unable to choose between right and wrong." It is argued that the evidence discloses that the defendant was born with a taint of insanity within his veins, and that he was insane by heredity; that he was subject to severe attacks of headache and was nearly always melancholy; that he gave way to the most violent fits of anger without provocation, was brutal to his mother and his children, and unnaturally cruel; that he had tremors and hallucinations, and would give way to paroxysms of grief over the violences and viciousness which he could not help. A specialist on brain disease, one of the superintendents of an insane asylum of the state, who testified in the case, denominated the defendant a "degenerate." Says the witness, by the use of that term is meant that the defendant is not up to the standard of normal mankind, referring especially to his intellectual, moral and physical forces; that such an individual would be subject to, and the victim of, a violent temper, uncontrollable appetites and impulses which his will power could not control, and that the absence of such ability to control his impulses and desires, owing to the fact that they were stronger than his will, though his reason and his judgment might not be at fault, would constitute technical insanity. It is further said that such a person would not have a normal conception of what constituted right and wrong as to himself, nor to his family, nor to society. Testimony of other physicians of a similar character was also introduced in evidence, as was also the testimony of nonexpert witnesses who, after detailing the actions and conduct of the defendant, expressed it as their opinion that he was insane. To meet evidence of this character, the state introduced several witnesses who, after showing some familiarity with the defendant, were permitted to testify that, in their judgment, he was sane.

After the introduction of the evidence, the defendant's counsel requested the following instruction as embodying a correct principle of law, which was refused: "If the defendant acted under an 'irresistible impulse which his will was powerless to resist, and which overcame his will, and which impulse was the outgrowth or result of physical infirmity or disease, you will acquit." From what has been said, it is obvious that, in respect of the nature of the defense, this case is in all its essential bearings `•` ilogous to, and controlled by, the principles announced in the case of *Schwartz v. State*, 65 Neb. 196. It is there said:

"Capacity to comprehend the nature and moral quality of an act determines criminal responsibility. There is no other safe or practical test. It is entirely certain that the defendant in this case did not have a well balanced mind. He had an inherited tendency to insanity, and had in past years received treatment in a hospital for the insane. It seems, too, that he had at times illusions and delusions, but these were not in any way connected with the crime in question. He had groundless fears, and heard voices in the air, but it was not in consequence of these things that he debauched his daughter. It may be conceded that his mental powers were impaired, and his conscience blunted by disease, but that does not render him legally irresponsible. If he understood what he was doing, and knew it was wrong and deserved punishment, the obligation to control his conduct and keep within the law was absolute. Having this degree of mental capacity, he can not allege the sway of a turbulent passion as an excuse for his crime. The doctrine of moral insanity or uncontrollable impulse, upon which counsel seem mainly to rely, is not recognized in the jurisprudence of this state." We are not disposed to depart from the rule as to the test of legal responsibility thus announced, which has the support of an unbroken line of decisions in this state, beginning with the case of *Wright v. People*, 4 Neb. 407. While the brief of counsel for the defendant is interesting in its discussion of the

varied forms, manifestations and stages of mental diseases, and pleads for an idealistic state in the treatment of those who may not be possessed of the strong, healthy and vigorous minds possessed by the average of humanity, nevertheless, in this practical age and as society is at present constituted, we are of the opinion greater evils will flow from a departure, than in continuing to travel along the well-beaten paths which guide and determine legal responsibility for violations of the law. The objection that the verdict is not sustained by sufficient evidence is not well taken.

It is contended the court erred in giving an instruction on the question of insanity, but as this instruction is substantially the same and, in principle, identical with one given in *Burgo v. State,* 26 Neb. 639, and approved by this court, we are constrained, on the authority of that case, to hold that the exception in the present instance is not well taken.

An instruction concerning what is a reasonable doubt, such as would call for an acquittal, is strenuously excepted to, and much of the brief is devoted to an analysis of, and animadversions upon, the same. This instruction, as is expressed in *Leisenberg v. State,* 60 Neb. 628, although frequently used, has never received judicial condemnation and we do not now feel that we are justified in condemning it, and therefore must overrule the exception to the giving of the same.

A more serious objection arises regarding the admission of certain evidence offered by the state, in rebuttal, to overcome the evidence of the defense on the question of insanity. Several nonexpert witnesses were permitted to testify that, in their opinion, the defendant was sane at the time of the commission of the act charged. No physicians were called by the state to give testimony concerning the defendant's mental condition. The nonexpert witnesses were permitted to testify as to their opinion of the mental condition of the defendant, without first testifying to the appearance, conduct and actions of the accused, and

other facts upon which their opinions were based. These several witnesses were shown to have a more or less intimate acquaintance with the defendant, such as would probably qualify them to testify to reputation, but the jury were denied the benefit of any testimony as to his speech, actions or conduct, from which the inference of sanity was drawn, and were given only the naked opinions of the witnesses concerning the question. The rule in this jurisdiction is that, while one who is not an expert may give his opinion on the question of sanity, yet, it must be in connection with and after detailing the facts upon which he bases such opinion, so that the jury may have, not only the benefit of the opinion of the nonexpert, but also the facts upon which such inference is predicated. In *Lamb v. Lynch,* 56 Neb. 135, it is held:

"Nonexpert witnesses can be permitted to express opinions as to the sanity or insanity of a person only when they have shown other sufficient qualifications, and have stated the facts and circumstances upon which their opinion of mental condition is based."

This rule is adverted to and the reasons for its existence discussed in *Hay v. Miller,* 48 Neb. 156, and *Hoover v. State,* 48 Neb. 184. Touching this subject, it is said by the supreme court of the United States: "The jury, being informed as to the witness' opportunities to know all the circumstances, and of the reasons upon which he rests his statement as to the ultimate general fact of sanity or insanity, are able to test the accuracy or soundness of the opinion expressed, and thus, by using the ordinary means for the ascertainment of truth, reach the ends of substantial justice." *Connecticut Mutual Life Ins. Co. v. Lathrop,* 111 U. S. 612, 621. To the same effect are *Schlencker v. State,* 9 Neb. 241; *Polin v. State,* 14 Neb. 540; *Shults v. State,* 37 Neb. 481; *Pflueger v. State,* 46 Neb. 493; *Snider v. State,* 56 Neb. 309; *Clarke v. Irwin,* 63 Neb. 539. See also McKelvey, Evidence, p. 197, notes 51 and 52; *Armstrong v. State,* 30 Fla. 170, 17 L. R. A. 484; *Ryder v. State,* 100 Ga. 528, 38 L. R. A. 721, and notes; *Burt v.*

*State,* 38 Tex. Cr. App. 397, 39 L. R. A. 305; *In re Christiansen,* 17 Utah, 412, 41 L. R. A. 504. As to the admissibility of the evidence of the character referred to, it is said by the state that, if it be held the prosecution failed sufficiently to qualify the witnesses, the reception of their testimony was without prejudice because the defendant had wholly failed to introduce any evidence to sustain the plea of insanity. The defense, it is said, has shown an abnormal mind and moral degeneracy, but not insanity. We find ourselves unable to adopt the suggestion. There was some competent evidence both of expert and nonexpert witnesses tending to prove the defense of insanity. The question was one of fact peculiarly within the province of the jury to determine. If was for them, upon the whole of the evidence properly admissible, to say, whether the defendant was guilty or not guilty. It was his constitutional right to have this question determined by the jury upon competent evidence. Whether the evidence in support of the plea of insanity introduced by the defendant, when standing alone, was sufficient to create in their minds a reasonable doubt of the defendant's guilt, was for the jury and not the court to determine. We are not prepared to say that no competent evidence tending to prove insanity was introduced, nor that guilt was indubitably established. Whatever might be our own views, with some competent evidence before the jury in support of the plea of insanity, we are constrained to say that it is for them to say whether guilt in a legal sense is shown by the evidence. When the state undertook to overcome the proof offered to sustain the defense of insanity by other evidence, inadmissible in the form in which it was presented and which was received over objections, this constitutes prejudicial error for which the judgment must be reversed and the cause remanded for further proceedings. Reversed and remanded accordingly.

REVERSED.