STATE OF NEBRASKA, APPELLEE, v. ROBERT JULIAN JACOBS, APPELLANT.

205 N. W. 2d 662

Filed March 30, 1973. No. 38559.

Frank B. Morrison, Sr., and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The defendant was charged with first degree murder in the death of Allen Dale Schmidt, and with stabbing Leslie Eugene Schmidt with intent to kill, wound, or maim. A jury was waived and the trial court found the defendant guilty on both counts. The defendant was sentenced to life imprisonment on the murder count and to imprisonment for 50 years on the stabbing count, the sentences to run consecutively.

There is little or no dispute concerning the facts of the case. The principal controversy relates to the standard to be used in determining whether the defendant was criminally responsible for his acts and whether the evidence was sufficient to sustain the finding that defendant was responsible. The record shows the defendant was mentally competent to stand trial.

On Saturday, October 16, 1971, the defendant spent a part of the afternoon drinking and playing cards with friends. At about 5 p.m., while driving his mother's automobile, he came upon Allen Dale Schmidt, 12 years old and Leslie Eugene Schmidt, 10 years old, who were selling candy for a PTA project. The defendant offered the boys $5 if they would help him

find his prize dog which was lost. The statement was false, but the boys agreed to help the defendant look for the dog. The defendant drove to a secluded area along the river north of the South Omaha Bridge in Omaha, Nebraska. On the way he stopped at a grocery store and purchased or stole a paring knife. The defendant parked the automobile near a creek and told the boys to go across the creek. Leslie refused so the defendant placed him in the trunk of the automobile. The defendant had anal intercourse with Allen and killed him with the paring knife. There were 29 stab wounds, and the head was nearly severed from the body. The defendant returned to the automobile, removed Leslie from the trunk, and attempted to kill him by choking, stabbing, and striking him with a tire iron. The defendant then left the area.

Allen's body was discovered the following day. Leslie was found alive but badly injured.

The defendant left Omaha on Monday and was apprehended in Rock Island, Illinois, on October 19, 1971.

The defendant was 31 years of age and employed as a packinghouse worker. He was of average intelligence with no organic brain disorder. He has a long history of violent, sadistic, antisocial conduct.

A defendant in a criminal action is presumed sane until evidence of insanity is produced. The State then has the burden of proving beyond a reasonable doubt that the defendant was sane at the time the crime was committed. State v. Klatt, 187 Neb. 274, 188 N. W. 2d 821.

The test of responsibility for crime is the defendant's capacity to understand the nature of the act alleged to be criminal and the ability to distinguish between right and wrong with respect to the act. State v. Long, 179 Neb. 606, 139 N. W. 2d 813. The doctrine of irresistible impulse or "moral insanity" has not been recognized as a defense or excuse for crime in this state.

The fact that a defendant may have some form of

mental illness or deficiency does not of itself constitute a defense or establish lack of responsibility. State v. Newson, 183 Neb. 750, 164 N. W. 2d 211; Washington v. State, 165 Neb. 275, 85 N. W. 2d 509. The law recognizes no form of insanity or uncontrolled impulse as a defense even though the mental faculties are disordered or deranged if the defendant had the capacity to know what he was doing and to understand the act was wrong. Thompson v. State, 159 Neb. 685, 68 N. W. 2d 267; Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349. It is only when the defendant is unable to understand the nature and quality of his act or unable to distinguish between right and wrong with respect to it that he cannot be held responsible.

Two psychiatrists were called by the defense. Dr. Herbert C. Modlin testified it was his opinion the defendant knew what he was doing and his acts were illegal, but not wrong in the sense they were a violation of an "internal moral code." He also testified the defendant's acts were the product of a mental disease or defect described as antisocial personality with periods of episodic discontrol or temporary psychosis. He further testified the defendant lacked substantial capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law.

Dr. William Burrows described the defendant as an antisocial personality who was fully aware of the nature of his acts and that they were wrong, but on an intellectual basis rather than on an emotional basis. He defined irresistible impulse as an urge to do an act known to be wrong but without sufficient conscience to prevent doing the act. He testified he thought the defendant's acts were the product of a mental disease or defect and the defendant lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

On cross-examination Dr. Burrows acknowledged the defendant was able to control his impulses until he had

arrived at a place where no one could see him and "then he could give way to his impulses." The impulse was not irresistible until he felt it was safe to give in to it. He further stated the impulse had run its course when the defendant had finished with Allen, and the defendant was not acting under an irresistible impulse when he tried to kill Leslie.

In a written report, which was received in evidence, Dr. Burrows stated: "Under the terms of the M'Naghten Rule I can see absolutely no reason whatsoever why this man should not be held accountable for his behavior. He was fully aware of the nature of his act when he committed it, was fully aware of the consequences of it and certainly was able to recognize right from wrong, although this is, I suspect, at an intellectual level rather than at an emotional level since he takes great pleasure in violence and aberrant behavior."

Although the doctrine of irresistible impulse has not been recognized as a defense in this state, the trial court indicated by a written memorandum that he found the defendant was not acting under an irresistible impulse at the time the crimes were committed. Such a finding is fully supported by the evidence. As the facts of this case show, and as conceded by Dr. Burrows, the defendant was quite capable of resisting his impulses until he felt it was safe to give in to them. The evidence did not show an irresistible impulse or such a lack of capacity to control his behavior as would constitute a defense to the crimes charged.

The defendant contends that the test to determine criminal responsibility used in this state is inconsistent with generally accepted scientific knowledge of the functioning of the human mind, as well as emerging legal policy, and is unconstitutional. He urges that a test conforming to the rule announced in Durham v. United States, 214 F. 2d 862, 45 A. L. R. 2d 1430, or as set forth in section 4.01 of the Model Penal Code proposed

by the American Law Institute, be declared to be the law of this state.

Under the Durham rule an accused is not criminally responsible if his unlawful act was the product of a mental disease or defect. The rule set forth in the Model Penal Code states that a person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The Durham rule is followed by only a very few courts. The Model Penal Code rule has received somewhat wider acceptance.

In Leland v. Oregon, 343 U. S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302, the United States Supreme Court held that the states may use the M'Naghten rule to determine criminal responsibility and are not required by the Fourteenth Amendment to adopt an irresistible impulse test. As stated by Mr. Justice Clark, the choice of a test of legal sanity involves not only scientific knowledge but questions of basic policy as to the extent to which that knowledge should determine criminal responsibility. The adoption of an irresistible impulse test is not implicit in the concept of ordered liberty.

In Bothwell v. State, 71 Neb. 747, 99 N. W. 669, in rejecting a contention that the irresistible impulse test should be adopted as the test of criminal responsibility, this court stated that greater evils would flow from a departure than in continuing to travel along the well-beaten paths which guide and determine legal responsibility for violations of the law.

The rule contained in the Model Penal Code inserts new terminology in this area of the law. We hesitate to introduce uncertainty in this area where concepts are now quite well-defined and understood. If the proposed rule, properly understood, would require the acquittal of the defendant in this case, then we reject it as an incorrect statement of the law in this state. For

the purposes of this case, it is sufficient to say that we find no merit in the defendant's contentions and the evidence clearly supports the trial court's finding the defendant was sane and criminally responsible at the time he killed Allen Schmidt and stabbed Leslie Schmidt.

In sentencing the defendant, the trial court ordered that at 2 o'clock on each anniversary of the crime, until he becomes 50 years of age, the defendant shall "be placed in solitary confinement and held there for a period of 24 hours, to be on a bland diet, and not to be held there upon bread and water," and the period of 24 hours shall be without labor. The direction relating to a "bland diet" does not appear in the judgment as entered upon the journal. Consequently, it is unnecessary to consider the defendant's contention that it was erroneous and unauthorized.

The judgment of the District Court is affirmed.

AFFIRMED.

McCOWN, J., concurring in result only.

The majority opinion reaffirms the M'Naghten test for legal insanity first enunciated by the House of Lords in 1843. In this century many jurisdictions have extended its application by engrafting some form of irresistible impulse concept. More frequently in recent years courts have adopted the American Law Institute test of legal insanity set out in section 4.01 of the Model Penal Code or a variation of it. That section provides:

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law.

"(2) As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

Undoubtedly the most significant distinction between the M'Naghten test and the American Law Institute test

is that the latter takes into account volitional impairment. It regards as being also legally insane those who, although they knew the act was wrong, were nevertheless unable to control their conduct.

Under the M'Naghten rule, a defendant who had the capacity to know what he was doing and to understand that the act was wrong is legally sane even though he is wholly unable to prevent himself from doing the act because of mental illness. Both the irresistible impulse test and the A.L.I. test expand the M'Naghten rule to include the case where mental disease produced a total incapacity for self control, even though the defendant may know the act is wrong. See Comments, Model Penal Code, § 4.01, Tent. Draft No. 4.

While several jurisdictions have adopted an irresistible impulse test, the basic objection to that test is that it is too narrow and carries a misleading implication that it applies only to sudden spontaneous acts as distinguished from insane propulsions which are accompanied by brooding or reflection.

Subsection (2) of the A.L.I. Model Penal Code test has been criticized by some psychiatrists as an unjustified restriction not psychiatrically sound and some courts have adopted only subsection (1) of the test. See, for example, United States v. Smith, 404 F. 2d 720 (6th Cir., 1968); United States v. Shapiro, 383 F. 2d 680 (7th Cir., 1967); Wion v. United States, 325 F. 2d 420 (10th Cir., 1963).

The overwhelming majority of all courts that have considered the issue within the past 25 years have recognized the inadequacy and insufficiency of the old M'Naghten test. A number of jurisdictions which generally follow the M'Naghten rule have adopted the irresistible impulse test. The A.L.I. test contained in the Model Penal Code, sometimes with minor variations, has already been approved by virtually all the United States Courts of Appeals and has also been accepted by the Legislatures and courts of a number of states.

It deserves to be adopted by this court and this case presents a direct opportunity to do so.