STATE OF NEBRASKA, APPELLEE, V. FRED W. MYERS, APPELLANT.

290 N. W. 2d 660

Filed April 1, 1980. No. 42839.

Casey & Elworth, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendant, Fred W. Myers, was charged with murder in the first degree in having shot and killed his father at their home in Louisville, Nebraska. After a court-entered plea of not guilty, the defendant was tried before a jury, found guilty of murder in the second degree, and sentenced to life imprisonment in the Nebraska Penal and Correctional Complex.

On appeal to this court, defendant contends that the trial court erred in two matters: Failure to sequester the jury during a break in the trial, and allowing a nonexpert witness to give opinion testimony as to the sanity of the defendant. We affirm.

The evidence indicates that on the evening of September 12, 1978, the defendant and his father were both at home. The county sheriff and a deputy came to defendant's house to inform him that his son, John Myers, was going to be placed in a temporary foster home. While John Myers was gathering some of his clothes and personal items, the defendant spoke briefly with the sheriff. He showed the sheriff that his father (John's grandfather) was passed out from drunkenness again, and stated that he would like to have his father committed for treatment of his alcoholism. A short time later, after the sheriff had left and was en route to Cedar Creek, he received a call telling him that there had been a shooting at the Myers home. Upon returning there, the sheriff talked to the defendant and arrested him

without further incident.

The fact that the defendant did shoot his father has never been in issue, since the defendant told both the sheriff and another person about the shooting. However, an issue was raised concerning the sanity of the defendant at the time of the shooting. The defendant claims it was error to allow one of the investigating officers, Sheriff Fred Tesch, to express his opinion as to the sanity of the defendant on the night of the shooting.

The rule in Nebraska has always been that a non-expert with an intimate personal acquaintance may be allowed to testify as to the sanity or insanity of a defendant. In Torske v. State, 123 Neb. 161, 242 N. W. 408 (1932), the court dealt with a similar problem and stated the following: "Nonexpert witnesses who have an intimate personal acquaintance with and an opportunity to observe the actions and demeanor of a person, before, at and after the time in question, may be permitted to testify as to his sanity or insanity when they have stated the primary facts which support their conclusion." This rule was later approved in Noble v. Sigler, 244 F. Supp. 445 (D. C. Neb., 1964), aff'd. 351 F. 2d 673, cert. den. 385 U. S. 853, 87 S. Ct. 98, 17 L. Ed. 2d 81 (1966). See, also, Bothwell v. State, 71 Neb. 747, 99 N. W. 669 (1904); People v. Wright, 58 Mich. App. 735, 228 N. W. 2d 807 (1975); People v. Gilbert Johnson, 52 Mich. App. 560, 218 N. W. 2d 65 (1974). The jury may weigh this opinion testimony and determine its credibility, but the mere fact that it is given by a nonexpert witness does not make it inadmissible if the witness qualifies as an intimate personal acquaintance of the accused.

The evidence indicates that the nonexpert witness, Sheriff Tesch, had the necessary intimate personal relationship with the defendant. The sheriff had dealt with and known the defendant for some 15 years, having observed the defendant in various

emotional states. He conversed with the defendant both shortly before and after the shooting. The non-expert witness in this case clearly fits within the definition of an intimate personal acquaintance. The trial court did not err in allowing him to express his opinion on the sanity of the defendant.

The defendant also contends that the court erred in failing to sequester the jury during trial. The jury was impaneled and sworn on April 12, 1979. Due to the Easter holidays, trial did not begin until April 16, 1979. In State v. Robbins, *ante* p. 226, 287 N. W. 2d 55 (1980), the court stated that the determination of whether or not a jury should be sequestered during the trial of a criminal case is left to the discretion of the trial court. The defendant has produced no evidence at all that any jury tampering or misconduct occurred during the 4-day break from April 12 to April 16. The trial court did not abuse its discretion in this matter. We find both of defendant's assigned errors to be without merit.

AFFIRMED.

KRIVOSHA, C. J., concurring in the result.

I concur in the result reached by the majority in this case. I cannot, however, agree that the rule expressed by the majority concerning the right of a nonexpert witness to testify as to a criminal defendant's sanity or insanity is or should be the law. I am fearful that the majority opinion, standing alone without further explanation, may cause the unwary to be led astray. The ultimate fact to be determined in this case was not whether the defendant was sane or insane (meaning whether he was mentally competent) at the time of the commission of the crime, but rather whether he had the ability to distinguish between right and wrong at that time, and who may testify concerning that ultimate fact. The rule involved in this case had its inception in the now famous M'Naghten's Case, 8 Eng. Rep. 718 (1843), wherein the House of Lords determined, "That

where an accused person is supposed to be insane, a *medical man,* who has been present in Court and heard the evidence, may be asked, as a matter of science, whether the facts stated by the witnesses, supposing them to be true, show a state of mind incapable of distinguishing between right and wrong.'' (Emphasis supplied.)

This jurisdiction has, since its very beginning, followed the rule in the M'Naghten case. See Wright v. The People, 4 Neb. 407 (1876).

In 1973, in the case of State v. Jacobs, 190 Neb. 4, 205 N. W. 2d 662 (1973), this court was specifically asked to abandon the M'Naghten rule and to replace it with either ''the irresistible impulse'' rule first announced in Durham v. United States, 214 F. 2d 862, (D.C. Cir., 1954), or the American Law Institute rule. We rejected both suggestions and again reaffirmed our adoption of the M'Naghten rule. We continue to adhere to that rule. See State v. Simants, 197 Neb. 549, 250 N. W. 2d 881 (1977).

Moreover, in the Jacobs case, we were careful to point out that insanity alone was not material, saying: ''The fact that a defendant may have some form of mental illness or deficiency does not of itself constitute a defense or establish lack of responsibility. [Citation omitted.] The law recognizes no form of insanity or uncontrolled impulse as a defense even though the mental faculties are disordered or deranged if the defendant had the capacity to know what he was doing and to understand the act was wrong. [Citations omitted.] It is only when the defendant is unable to understand the nature and quality of his act or unable to distinguish between right and wrong with respect to it that he cannot be held responsible.''

The opinion of a nonexpert witness that one is or is not insane does not address the issue as established in the M'Naghten case and as adopted by this jurisdiction.

The majority here would lead one to believe that a nonexpert witness who has had an intimate personal acquaintance with and an opportunity to observe the actions and demeanor of a person before, at, and after the time in question may be permitted to testify as to that person's sanity or insanity when the witness has stated the primary facts which support his conclusion. Further, the majority would seem to say that having so testified, a legitimate issue concerning the defendant's sanity or insanity in a criminal case is created for the jury's consideration. Such testimony, standing alone, does not satisfy the requirements of the law under the M'Naghten rule and does not raise a legitimate issue to be submitted to the jury. So long as we profess to follow the M'Naghten rule, we should strictly adhere to its requirements.

If, as in this case, a sheriff may render an opinion as to one's sanity within the M'Naghten rule, then to be sure other nonexperts likewise may render opinions as to the defendant's insanity. We should not permit that to be done. We do not permit nonexperts to render opinions concerning physical illness. We likewise should not permit nonexperts to render opinions concerning mental illness, particularly when the nature of the mental illness must be of such magnitude as to preclude the defendant from knowing the difference between right and wrong. Such an opinion requires more than just a layman's conclusion that a person is either "sane" or "insane." As clearly pointed out by our decision in the Jacobs case, mere mental illness alone is not sufficient. A lay person may conclude that an individual is insane because he is a paranoid or a schizophrenic or a manic-depressive. All that being true, however, it is not sufficient to meet the issues which are raised in a murder case where the defendant pleads not guilty by reason of insanity.

A nonexpert witness may be permitted in a proper

case to testify as to what he has observed about the defendant's behavior; but he should not be permitted to state his own conclusions. In this particular case, as a matter of fact, the sheriff was not permitted by the trial court to testify as to what he observed but was required to testify only as to his ultimate conclusion. The trial court was wrong in so limiting the sheriff. However, because of other appropriate testimony in the case, as noted below, the action of the trial court with regard to the sheriff's testimony did not constitute prejudicial error and did not entitle the defendant to a new trial. See Chapman v. California, 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

The record in this particular case discloses that the State called an eminent board-certified psychiatrist who testified that in his opinion, based upon his examination of the defendant, the defendant, at the time of the commission of the crime, did in fact know the difference between right and wrong. The defendant then called a board-certified psychiatrist who testified that in his opinion the defendant did not know the difference between right and wrong. It was that conflicting testimony that satisfied the requirements of the rule in the M'Naghten case and which raised the issue for the jury to decide. It was not the sheriff's testimony, standing alone, which created a jury question concerning the defendant's sanity or insanity. The most the sheriff could do by describing what he observed was to corroborate and support the medical conclusion rendered by the expert. If our decision in Torske v. State, 123 Neb. 161, 242 N. W. 408 (1932), relied upon by the majority, stands for anything more than that limited rule, it should be disavowed by this court and overruled.

I believe the record in this case provided the jury with ample medical testimony from which it could reach its conclusion. It is for that reason that I concur in the results while disagreeing with the rationale.

McCOWN and HASTINGS, JJ., join in this concurrence.