NORTH STAR LODGE #227, A.F. & A.M., A NEBRASKA
CORPORATION, ET AL., APPELLANTS, V. THE CITY OF
LINCOLN, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

322 N.W.2d 419

Filed July 23, 1982.   No. 44359.

C. Arlen Beam of Knudsen, Berkheimer, Beam, Richardson & Endacott, for appellants.

William F. Austin, City Attorney, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

This is an appeal from an order of the District Court of Nebraska, Third Judicial District, in and for Lancaster County, dismissing plaintiffs-appellants' amended petition.

Appellants, as real property owners and taxpayers of the city of Lincoln, filed an amended petition which, among other things, collaterally attacked the validity of ordinance No. 13006 adopted by the defendant-appellee City of Lincoln, which ordinance created Business Improvement District No. 2. The amended petition alleged, inter alia, that the

defendant-appellee City improperly applied the phrase "assessable unit" found in Neb. Rev. Stat. § 19-4027 (Cum. Supp. 1980). The defendants-appellees demurred on the ground that the amended petition failed to state facts sufficient to constitute a cause of action. The demurrers were sustained and appellants elected to stand on their amended petition. We agree that the City improperly applied the phrase "assessable unit" and reverse the order of the District Court.

We turn to Neb. Rev. Stat. § 19-4024 (Cum. Supp. 1980), which reads: "Upon receiving the recommendation from the business improvement board, the city council after consulting with the planning commission if the city has a planning commission may create one or more business improvement districts by adopting a resolution of intention to establish a district or districts. The resolution shall contain the following information:

"(1) A description of the boundaries of any proposed district;

"(2) The time and place of a hearing to be held by the city council to consider establishment of a district or districts;

"(3) The proposed public facilities and improvements to be made or maintained within any such district; and

"(4) The proposed or estimated costs for improvements and facilities within any district, and the method by which the revenue shall be raised.

"The notice of intention shall recite that the method of raising revenue shall be fair and equitable. In the use of a general license and occupation tax, the tax shall be based primarily on the square footage of the owner's and user's place of business. In the use of a special assessment, the assessment shall be based upon the special benefit to the property within the district."

Neb. Rev. Stat. §§ 19-4025 and 19-4027 (Cum. Supp.

1980) provide for the conduct of a hearing concerning the creation of the district. Section 19-4027 further provides: "If a special assessment is to be used, proceedings shall terminate if written protest is made prior to the close of the hearing by the owners of over fifty per cent of the assessable units in the proposed district. If an occupation tax is to be used, proceedings shall terminate if protest is made by over fifty per cent of the users of space in the proposed district."

Neb. Rev. Stat. § 19-4029 (Cum. Supp. 1980) provides in pertinent part: "The city council, following the hearing, may establish or reject any proposed district or districts. If the city council decides to establish any district, it shall adopt an ordinance to that effect. This ordinance shall contain the following information:

. . . .

"(6) A statement that the businesses and professions in the area established by the ordinance shall be subject to the general business license and occupation tax or that the real property in the area will be subject to the special assessment authorized by sections 19-4015 to 19-4038;

"(7) The method of proposed assessment to be imposed within the district or the initial rate of the license and occupation tax to be imposed . . . ."

Appellants allege that on September 2, 1980, the Lincoln city council adopted resolution A-67094 which constituted the statutorily required notice of intent to create Business Improvement District No. 2 relating to certain properties fronting on North 48th Street from the centerline of Huntington Avenue to the centerline of Madison Avenue for the construction and maintenance of certain aesthetic amenities. The resolution further provided that the method of raising the revenue required would be fair and equitable, and assessments were proposed to be levied by the front-foot method. On September 29,

1980, a public hearing was held at which was filed a written protest by owners of over one-half of the lots and/or partial lots in the proposed district. Subsequently, the defendant City determined that the protestants owned but 46 percent of the front footage in the proposed district; determined that "assessable unit" as used in § 19-4027 meant "front foot along 48th Street"; concluded therefore that less than one-half of the owners of the assessable units protested; and adopted the ordinance creating the business improvement district at issue.

The question presented relates not only to whether "assessable unit" as used in § 19-4027 was correctly applied by the City but also at what point in the process of creating a business improvement district the term is to be applied.

A reading of § 19-4024 indicates that the reference in subsection (4) thereof to the method by which revenue shall be raised is tied to and further clarified and expanded upon by the paragraph which follows it. We therefore construe § 19-4024(4) and the paragraph following it as one delineated passage; the alternatives referred to in § 19-4024(4) consist of a choice between a general license and occupation tax and a special assessment tax.

In view of the foregoing, it becomes clear that the City acted prematurely in adopting the front-foot method of special assessment as the means of raising the needed revenue in its notice of intent to create the district. The only choice proper and necessary at that stage of the process was a choice between a general license and occupation tax and a special assessment tax. The proper time for a choice as to what method of special assessment is to be used, if such is the route decided upon, is at the time of adoption of the creating ordinance, as set forth in § 19-4029. Such a reading is consistent with § 19-4029(6) and (7). Therein, subsection (6) refers to the two broad choices, either a general business

license and occupation tax or a special assessment tax; subsection (7) mandates a more specific statement after the initial choice has been made, requiring inclusion of the method by which the special assessment is to be imposed, or inclusion of the rate at which the general business and occupation tax is to be imposed. This being the case, it was not statutorily proper for the defendant City to have determined the adequacy of protests on the basis of front-foot ownership.

We next consider the correct meaning of the term "assessable units" as used in the instant statute. The term is not defined in the statute and has no independent, clear meaning of its own; it is ambiguous. When the language used in a statute is ambiguous and must be construed, recourse should be had to the legislative history for the purpose of discovering the intent of the lawmakers. *PPG Industries Canada Ltd. v. Kreuscher,* 204 Neb. 220, 281 N.W.2d 762 (1979). Whatever the term "assessable unit" means, it is clear that it does not mean "front foot." As originally introduced before the Legislature the pertinent language of L.B. 251 read as follows: "Proceedings shall terminate if protest is made by the owners of over fifty per cent of the assessable front footage in the proposed district." The subsequent amendment replaced the phrase "assessable front footage" with the phrase "assessable units." Legislative Journal, 86th Leg., 1st Sess. 1894 (May 7, 1979). It is also noteworthy that this same legislative session used the term "front footage" in Neb. Rev. Stat. § 19-4026 (Cum. Supp. 1980) of the act wherein 30 percent of the assessable front footage is able to petition a city council in order to create a district. Since it is a basic rule of construction that effect is to be given, if possible, to every word, clause, and sentence of a statute, *Ulbrick v. City of Nebraska City,* 180 Neb. 229, 141 N.W.2d 849 (1966), it follows that "front foot" and "assessable unit" may

not be used interchangeably. This is what the appellees' interpretation would require.

Having said what an assessable unit is not, we now consider what it is. The Constitution of the State of Nebraska, art. VIII, § 6, requires that real property, when specially assessed, be assessed according to the benefits received. *Brown Real Estate Co. v. Lancaster County,* 110 Neb. 665, 194 N.W. 897 (1923), interpreted this language to require a delineation of the resulting assessments on a lot or parcel basis, each lot or parcel bearing an assessment proportionate to the benefit which it receives. This approach also comports with the commonsense meaning of the term since, as appellants urge, only a lot or parcel of lots can be foreclosed upon in the event of nonpayment of taxes; front feet are capable of being separately assessed, but not separately foreclosed upon. In a statute providing for special assessment of real estate based upon the benefits accruing thereto, it is reasonable to assume, in the absence of a contrary indication, that had the Legislature meant some other basis of assessment, they would have said so.

The record in this case indicates that had the statute been properly interpreted and followed, the proceedings which appellants have contested would have terminated at the initial creation hearing, due to the filing of written protests by more than the statutorily required 50 percent of assessable unit owners. It follows therefrom that the adoption of ordinance No. 13006 was invalid, and that actions taken thereunder were done without authority sufficient to sustain them.

The foregoing analysis being dispositive of the instant appeal, it is not necessary to address the other issues raised by appellants.

We reverse the order of dismissal and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.