STATE OF NEBRASKA, APPELLEE, v. RAYMOND J. VOSLER, APPELLANT.

345 N.W.2d 806

Filed February 17, 1984. No. 82-411.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT,• JJ.

PER CURIAM.

Defendant was charged with first degree murder. Pursuant to the jury's verdict, he was adjudged guilty of second degree murder and now appeals. We reverse and remand for a new trial.

On November 26, 1981, defendant's wife was hospitalized as the result of a drug overdose which she had taken because of despondency over an extramarital affair she had been having with the victim, a close friend of the defendant. Both the defendant and his wife's paramour had been with her at the intensive care unit of the hospital. After the visit the defendant left the hospital and obtained a gun from a friend on the pretext of going hunting. There is evidence which, if believed by the jury, would support a finding that defendant returned to the hospital intending to commit suicide in the presence of his wife in order to induce in her sufficient guilt so as to prevent her from later marrying the victim. Upon walking into his wife's room defendant saw the victim hugging and kissing defendant's wife. At about the same time, the victim said something such as

"things sure happen fast," whereupon the defendant pulled out the gun and shot and killed his wife's paramour.

Defendant pled not guilty and the cause was set for trial. He moved for discovery, including the results and reports of any mental examinations made in connection with the case. Reciprocal discovery was granted pursuant to statute. Defense counsel orally advised the State that defendant intended to call two psychiatric witnesses to testify concerning defendant's ability to form the necessary criminal intent at the time of the act, but did not file any written notice of an intention to plead not responsible by reason of insanity. Thereafter, the State moved for an order appointing and authorizing a physician qualified and engaged in the practice of psychiatry to examine the defendant. In granting the order the court made clear that if the defense did not introduce the testimony of its experts regarding intent, the State could not introduce the testimony of its expert on that issue. The court also stated that "any direct admissions of guilt that might be made by the defendant to an examining medical expert would not be admissible to prove that element. In other words, it would be limited strictly to rebuttal."

At trial both of defendant's experts did testify. One of them opined that the defendant had no mental illness. The other testified that although the defendant did not qualify for an insanity defense, he likely had a suicide plan when he entered the hospital room and that the shooting was done in response to an "irresistible impulse" provoked by the unexpected occurrence of encountering his wife and her paramour in the hospital room. The psychiatrist called by the State testified that the defendant was not mentally ill and had a logical and carefully thought-out plan to achieve the goal of killing the victim. He did testify that, based on what the defendant told him, he would agree that the defendant had acted on an irresistible impulse, but stated it as

his opinion that in light of the record such was not in fact the case.

Although the record before us contains no verdict form relating to a finding of insanity, the court's instructions did inform the jury that one of its options was to find the defendant not responsible by reason of insanity. The instructions defined insanity in the usual terms as the inability to understand the nature and quality of his act and the inability to distinguish between right and wrong, or to know that such act was wrong and deserved punishment. The court also instructed the jury that intent was an element of each of the crimes of first and second degree murder. The definition of intent included the customary language that it is a mental process and therefore is rarely, if ever, susceptible of proof by direct evidence and may be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his conduct.

The defendant contends the trial court erred in (1) refusing an instruction on the offense of manslaughter, (2) permitting the State to examine the defendant on the issue of his ability to form the requisite intent, and (3) overruling defendant's objection to its instruction and verdict form, permitting the jury the option of finding defendant not responsible by reason of insanity.

In order to find one guilty of first degree murder, he must have killed "purposely and with deliberate and premeditated malice." Neb. Rev. Stat. § 28-303 (Reissue 1979). To be convicted of second degree murder, one must have caused death "intentionally, but without premeditation." Neb. Rev. Stat. § 28-304 (Reissue 1979). To be adjudged guilty of manslaughter, one must have killed "without malice . . . upon a sudden quarrel." Neb. Rev. Stat. § 28-305 (Reissue 1979). In all trials for murder the jury before whom such trial is had, if the defendant is found guilty, shall ascertain whether it be murder in the first or second degree, or manslaughter. Neb. Rev.

Stat. § 29-2027 (Reissue 1979). As pointed out in *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982), *appeal on retrial* 214 Neb. 685, 335 N.W.2d 309 (1983), the question which must be answered in determining if the record sustains defendant's first assignment of error under § 28-305 is whether there is at least some evidence which would permit the jury to find the defendant guilty of killing without malice upon a sudden quarrel. If such evidence existed the court was required to charge the jury concerning the elements of the lesser-included offense of manslaughter. Although defendant addresses this issue as if it involved the question of a lesser-included offense, it does not. Manslaughter is not a lesser-included offense of first degree murder as "lesser-included offense" is defined in *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982). A lesser-included offense is one the elements of which are such that it is impossible to commit the greater without at the same time having committed the lesser.

In the context of the evidence in this case, it becomes important to determine what is meant by a "sudden quarrel," as the phrase is used in § 28-305. Certainly, a sudden quarrel does not necessarily require an exchange of angry words contemporaneously with the killing.

In *State v. Worley*, 178 Neb. 232, 132 N.W.2d 764 (1965), this court found the evidence that defendant therein shot the victim without any exchange of words sometime after a display of anger to be adequate to support a manslaughter instruction. As noted earlier, upon the record in this case the jury would have been justified in finding that the defendant returned to the hospital with the intention of committing suicide in the presence of his wife and that he was provoked into killing the victim by the display of affection between his wife and the victim. Accordingly, this is not a case such as was presented in *State v. Tamburano*, 201 Neb. 703, 271 N.W.2d 472 (1978). Therein, there was no conflict in the evi-

dence requiring the jury to choose between the charged offense and the lesser-included offense of second degree sexual assault. That is to say, the jury could only believe or else not believe the victim, who was the only source of testimony concerning the element of penetration. Therefore, the jury could only find the defendant either guilty as charged or not guilty. Neither is the case before us one such as was presented in *State v. Beers*, 201 Neb. 714, 271 N.W.2d 842 (1978), wherein Beers and his wife had been estranged and living apart and substantial time had elapsed between Beers' observance of another kissing his wife and the fatal shooting by him of yet another party.

The record before us sustains defendant's first assignment of error herein under the requirements of § 29-2027; the judgment of conviction must therefore be reversed.

Inasmuch as the matter must be retried and the same concerns presented by the remaining two issues will arise again, we address them at this time.

Defendant argues that insanity was never an issue in this case; that his psychiatric evidence was directed only toward showing that when he shot his wife's paramour, the act was not done with premeditated malice as required by the crime with which he was charged. Consequently, urges the defendant, the court should not have given the insanity defense instruction, nor should it have given the jury a verdict form providing it with the opportunity to find defendant not responsible by reason of insanity.

In *Washington v. State*, 165 Neb. 275, 85 N.W.2d 509 (1957), the evidence included testimony that the defendant Washington had subnormal mentality. This court said that although the degree of subnormal intellect might not be so extreme as to render the accused unable to distinguish between right and wrong and thus not justify a finding that he was not responsible by reason of insanity, nonetheless, evidence of an accused's condition of mind at the time of the

crime is admissible to show the absence of deliberation or premeditated design. We thus held therein that the trial court had erred in instructing the jury that defendant's intelligence could be considered solely in connection with the penalty to be imposed. In *Starkweather v. State*, 167 Neb. 477, 93 N.W.2d 619 (1958), the defendant, having pled not guilty and not guilty by reason of insanity, was convicted of first degree murder. This court said therein that a special diminished capacity instruction need not be given where the jury had otherwise been properly instructed that intent was an element of the crime charged. In that case no issue was raised as to the giving of an insanity defense instruction, as insanity such as to excuse the criminal act had been put in issue by the defendant. In *State v. Hall*, 176 Neb. 295, 125 N.W.2d 918 (1964), the defendant was convicted of first degree murder as the result of a homicide committed during the perpetration of a robbery. On appeal the death penalty was reduced to life imprisonment because of evidence that the 19-year-old defendant had a low intellect, was easily led by others, and had no prior criminal record. This court ruled therein that the trial court had committed no prejudicial error in instructing the jury on the issue of insanity, a defense not specifically raised by the defendant. In *Hall* the defendant introduced evidence that he was feebleminded and that, as a result, his ability to distinguish right from wrong was impaired. The *Hall* opinion observed that the law is well settled that the only test for excusing criminal conduct is whether the defendant knows the difference between right and wrong, or understands the nature and quality of his act, irrespective of what the mental condition is called. This court then quoted with approval language from a California case to the effect that if one offers evidence as to his mental infirmity with the objective of mitigating his punishment, the court may instruct the jury as to

the legal standard by which accountability for that criminal conduct is to be determined.

While evidence of an accused's mental condition at the time the offense was committed is always admissible to prove absence of intent, our law does not recognize as a defense the concept of "irresistible impulse." Therefore, any opinion of a mental health expert based on the theory of "irresistible impulse" is irrelevant and therefore inadmissible for any purpose. *State v. Jacobs*, 190 Neb. 4, 205 N.W.2d 662 (1973); *Bothwell v. State*, 71 Neb. 747, 99 N.W. 669 (1904).

One of sound mind is conclusively presumed to intend the obvious and probable consequences of his voluntary act. *State v. Ortiz*, 187 Neb. 515, 192 N.W.2d 151 (1971). It has been held that even in those criminal cases wherein a specific intent is an element of the crime, an accused, if sane, is presumed to intend the necessary and probable consequences of voluntary, unlawful acts which are knowingly performed. Such presumption, although rebuttable in cases where a specific intent is an element of the crime, is sufficient to establish a prima facie case as to intent and will prevail, unless from a consideration of all the evidence the trier of fact entertains a reasonable doubt that such an intention existed. *Kirkendall v. State*, 152 Neb. 691, 42 N.W.2d 374 (1950). As we have seen, although there is but one type of insanity which will support a finding of not guilty or not responsible by reason of insanity, there are a variety of mental conditions which bear upon the ability to form a specific intent. A specific intent, in turn, bears at least upon the degree of criminality which may be assessed and may determine whether any criminality exists at all. Therefore, when insanity has not been pled as a defense and evidence concerning the defendant's mental condition is introduced solely to establish that he lacked the ability to intend the obvious and probable consequences of his voluntary act, and thus is of-

fered to rebut the presumption which flows from his act, the trial court should not define for the jury the elements of the insanity defense. Such defense is not an issue in the case unless the defendant has pled it as a defense and has otherwise complied with the provisions of Neb. Rev. Stat. § 29-2203 (Cum. Supp. 1982), or as in *Hall*, when testimony aimed at establishing an insanity defense has been allowed.

Defendant correctly argues that any instruction concerning an unpled and unproved insanity defense is likely to confuse a jury as to the proper role the evidence concerning the defendant's mental condition is to play in its determinations. The insanity defense instruction should not have been given. On the other hand, an instruction to the jury that any evidence received concerning defendant's mental condition bears only on the presence or absence of the intent necessary to prove the crime charged would not hold the same capacity to confuse and, under the circumstances presented herein, would be proper.

Defendant argues in his remaining assignment of error that his examination by the State was not authorized by § 29-2203 and, further, that the examination violated his fifth amendment privilege against self-incrimination.

That statute, in pertinent part, provides that one prosecuted for an offense may "plead that he or she is not responsible by reason of insanity at the time of the offense," but that no evidence offered by the defendant for the purpose of establishing his or her insanity shall be admitted unless prior notice of the intention to rely upon the insanity defense is given. Statutes, although they must be construed sensibly, are not open to construction as a matter of course. They are to be construed only when they are ambiguous. *Spilinek v. Spilinek*, 215 Neb. 35, 337 N.W.2d 122 (1983); *State v. Coffman*, 213 Neb. 560, 330 N.W.2d 727 (1983); *North Star Lodge #227 v. City of Lincoln*, 212 Neb. 236, 322 N.W.2d 419 (1982);

470

*County of Douglas v. Board of Regents*, 210 Neb. 573, 316 N.W.2d 62 (1982). The language of § 29-2203 specifically provides that it applies to one who pleads "not responsible by reason of insanity." There is no ambiguity in that language, and it cannot be construed to apply to situations wherein one puts his mental condition into issue for some purpose other than establishing lack of responsibility by reason of insanity.

Turning to the question of whether defendant's examination by the State violated his privilege against self-incrimination under the circumstances of this case, we start with the basic premise that the fifth amendment to the U.S. Constitution, made applicable to the states through the fourteenth amendment, commands that no person shall be compelled in any criminal case to be a witness against himself. In *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), during bifurcated proceedings required by Texas law in capital cases, Smith had been convicted of a felony murder, and a hearing was held regarding the penalty to be imposed. During that hearing, conducted before a jury, Smith offered no psychiatric testimony himself. The State then called as a witness a psychiatrist who had examined Smith to determine his competency to stand trial. The psychiatrist's testimony at the hearing was based on information obtained from that examination of Smith. Based on the privilege against self-incrimination, the Court refused to allow such testimony at the penalty stage of the proceeding at which the State still had the burden of establishing the proper penalty. It refused to analogize the situation to "a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting

his proof on an issue that he interjected into the case." 451 U.S. at 465.

In light of *Estelle* we are inevitably drawn to the conclusion that the introduction into evidence of the testimony of the State-retained psychiatrist, who examined defendant under court order, violated his privilege under the fifth amendment. Defendant's use of evidence of his mental condition to rebut the charge that he acted with premeditation and malice was aimed squarely at an element of the crime which the State had the burden to prove; that is, whether the defendant had the intent required to commit murder.

The issue is not one in connection with which the State is without resources to controvert defendant's evidence. As we stated earlier, the State has operating for it the presumption that an accused is presumed to intend the necessary and probable consequences of his voluntary act. The State was also able to cross-examine any witnesses the defendant presented. The State could also have an appropriate witness attend the trial and testify on the issue based upon what the witness learned as a result of the evidence adduced at trial.

Prior to trial, the defendant filed a discovery motion requesting the State to disclose the results and reports of any physical or mental examination made in connection with its prosecution of Vosler. As such, under Neb. Rev. Stat. § 29-1916(2) (Reissue 1979), defendant may have waived his privilege against self-incrimination concerning like material in his possession or under his control. From the record it appears that such reciprocal discovery was granted to the State. In short, this case is not one in which the State was bereft of resources, absent a mental examination, to dispute defendant's claim that he acted without the requisite intent when he shot his wife's paramour.

The State contends that defendant's introduction of expert psychiatric testimony concerning his

ability to form the criminal intent, which was an element of the crime with which he is charged, is really an attempt to raise the defense of insanity, and, as such, the court was empowered to compel Vosler's psychiatric examination by state authorities. While, even absent the compliance with § 29-2203, a court may have the inherent power to order a psychiatric examination of a defendant who places his sanity in issue, *United States v. Albright*, 388 F.2d 719 (4th Cir. 1968) (see, also, cases cited in *Estelle v. Smith*, *supra*, including *United States v. Cohen*, 530 F.2d 43 (5th Cir. 1976), *cert. denied* 429 U.S. 855, 97 S. Ct. 149, 50 L. Ed. 2d 130, and *Pope v. United States*, 372 F.2d 710 (8th Cir. 1967), *vacated and remanded on other grounds* 392 U.S. 651, 88 S. Ct. 2145, 20 L. Ed. 2d 1317 (1968)), such is not the case when a defendant is only attempting to rebut the existence of the intent element of a crime with which he is charged. When one pleads insanity and offers evidence on that issue, such a plea carries with it an implicit, although not legally operative, admission of the State's charges. Such a plea necessarily carries with it the assertion that the commission of the act, along with the intent, was the result of the defendant's inability to understand the nature and quality of the act or distinguish right from wrong.

On the other hand, a person who introduces evidence of his mental condition to rebut the presumption that the act he performed was coupled with the requisite intent makes no admission of the crime. Such evidence is offered to show only that the crime charged was not committed. It carries with it no concession of the State's case and does not interject an issue foreign to the State's burden of proof. Throughout the proceedings, the State is contending that the defendant committed the crime, and the defendant is contending he did not. In such a situation the fifth amendment requires that the State prove its case without compelling the defendant to submit to

interviews by those in its employ. Defendant's final assignment of error is well taken.

The judgment is reversed and the cause remanded for a new trial in keeping with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting in part.

I concur in that part of the opinion of the court which holds that the judgment must be reversed because of the failure to submit an instruction on manslaughter to the jury as a lesser offense.

I also concur in the statement that the concept of "irresistible impulse" or compulsive behavior is not recognized as a defense in Nebraska.

Nebraska follows the M'Naghten rule as to the defense of insanity and does not recognize a defense based upon the doctrine of irresistible impulse. "The test of responsibility for crime is the defendant's capacity to understand the nature of the act alleged to be criminal and the ability to distinguish between right and wrong with respect to the act." *State v. Jacobs*, 190 Neb. 4, 6, 205 N.W.2d 662, 663 (1973). See, also, *Wright v. The People*, 4 Neb. 407 (1876). "The doctrine of irresistible impulse or 'moral insanity' has not been recognized as a defense or excuse for crime in this state." *State v. Jacobs, supra* at 6, 205 N.W.2d at 663. " 'The doctrine of moral insanity or uncontrollable impulse, upon which counsel seem mainly to rely, is not recognized in the jurisprudence of this state.' We are not disposed to depart from the rule as to the test of legal responsibility thus announced, which has the support of an unbroken line of decisions in this state, beginning with the case of *Wright v. People*, 4 Neb. 407." *Bothwell v. State*, 71 Neb. 747, 750, 99 N.W. 669, 671 (1904). See, also, *State v. Long*, 179 Neb. 606, 139 N.W.2d 813 (1966).

In a jurisdiction which does not recognize the doctrine of irresistible impulse, evidence of a mental condition, other than intoxication or subnormal mentality, which does not amount to legal insanity may

not be considered in determining whether the crime charged or a lesser offense was committed. Therefore, evidence of an "irresistible impulse" without proof that the defendant suffers from intoxication or subnormal mentality or a mental disease existing to such a high degree as to overwhelm reason, judgment, and conscience so that the accused would be unable to understand the nature and quality of his act and to distinguish right from wrong is not admissible to negate specific intent.

The real danger in permitting psychiatric evidence of mental or emotional disorders short of insanity to negate intent is to substantially destroy the M'Naghten rule and to clutter practically every trial with some sort of expert opinion evidence as to whether the defendant possessed the requisite intent to commit the crime charged.

In the present case evidence of an "irresistible impulse" on the part of the defendant was inadmissible because it concededly did not amount to proof of legal insanity.

In this case the trial court was faced with a unique situation, since the two psychiatrists called by the defendant were allowed to testify without objection by the State that the defendant shot the victim as the result of an irresistible impulse. These expert witnesses testified in substance that the defendant had no significant mental illness but suffered from a compulsive neurosis characterized by high levels of anxiety and tension; that the defendant knew the nature and quality of his act and knew the difference between right and wrong; and that the defendant did not qualify for the defense of insanity under the law of Nebraska.

The opinion of the court states that the jury should have been instructed that any evidence received concerning the defendant's mental condition would bear on the presence or absence of the intent necessary to prove the crime charged. In view of the evidence then before the jury, the effect of such an in-

struction would be to advise the jury that it might consider the evidence as to irresistible impulse in determining whether the defendant possessed the necessary intent to kill the victim.

Under the circumstances in this case and in view of the testimony of the defendant's expert witnesses, the trial court should have instructed the jury that insanity had not been pleaded or proven. The court should have informed the jury of the elements of the insanity defense, explained that the defendant had put on no proof that he was insane, that the law therefore presumes he is sane and intended the probable consequences of his acts, and that any evidence with regard to an "irresistible impulse" could not be considered as a basis for a finding of insanity or that the defendant did not have the required intent at the time he committed the act charged.

Where psychiatric testimony is relevant and admissible, the trial court may require the defendant to submit to a psychiatric examination by an expert appointed by the court or selected by the State.

Neb. Rev. Stat. § 29-1916(2) (Reissue 1979) provides that a defendant who obtains an order under the provisions of Neb. Rev. Stat. §§ 29-1912 to 29-1921 (Reissue 1979) waives his privilege against self-incrimination for the purposes of the operation of the provisions of that section. The defendant in this case moved for discovery under § 29-1912, and an order granting reciprocal discovery was made.

Such an examination is specifically authorized where the defendant has pleaded not guilty by reason of insanity at the time of the offense. Neb. Rev. Stat. § 29-2203 (Cum. Supp. 1982). The reasons which support the right of the State to compel such an examination where the defendant pleads insanity are equally applicable in any case where psychiatric evidence may be offered by the defendant.

As the U.S. Supreme Court observed in *Estelle v. Smith*, 451 U.S. 454, 465, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981): "When a defendant asserts the insanity

defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." Even though the State in this case failed to object to the evidence of an "irresistible impulse," fundamental fairness should prevent a defendant who uses such psychiatric testimony in his defense from denying the State an opportunity to meet and rebut that evidence. See *People v Mangiapane*, 85 Mich. App. 379, 271 N.W.2d 240 (1978), holding that the State is entitled to a psychiatric examination of the defendant whenever he puts his mental condition into issue in any form.

HASTINGS and CAPORALE, JJ., join in this dissent.