COUNTY OF DOUGLAS, NEBRASKA, APPELLEE, V.
BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA, A CORPORATION, APPELLANT.

316 N.W.2d 62

Filed February 12, 1982. No. 43670.

David R. Buntain of Cline, Williams, Wright, Johnson & Oldfather for appellant.

Donald L. Knowles, Douglas County Attorney, and John Q. Powers for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ., and RONIN, Retired District Judge.

McCOWN, J.

This is an action by Douglas County to recover money allegedly erroneously paid to the Board of Regents of the University of Nebraska for patient care rendered

at the Nebraska Psychiatric Institute to indigent mentally ill patients who were residents of Douglas County. The District Court entered judgment against the Board of Regents for $100,199.93, together with interest from the date of payment. The Board of Regents has appealed.

The facts in this case are stipulated. The Nebraska Psychiatric Institute (NPI) was created in 1952 as a state hospital for the mentally ill and was under the control of the Department of Public Institutions (DPI), which delegated control of the teaching function at NPI to the Board of Regents of the University of Nebraska. NPI provides care to residents of several counties and approximately 85 percent of its patients are residents of Douglas County.

Prior to July 1, 1969, the cost of patient care at NPI was borne by the patient himself and, in the event he could not pay, by the State of Nebraska through its general appropriations to the DPI. On July 1, 1969, the DPI and the state became entitled to reimbursement for a portion of the unpaid costs of such care from the county in which the patient resided and from patients' relatives by reason of 1969 Neb. Laws, Ch. 812, § 14, p. 3055 (except for minor changes not relevant here, now Neb. Rev. Stat. § 83-376 (Reissue 1976)). That statute provides: "When the full cost determined to be necessary for the care, support, maintenance, and treatment of any patient is not paid by the patient or his relatives within thirty days of receipt of such care, (1) the county in which the patient resides shall pay (a) the first fifteen dollars per day of the unpaid cost for each of the first thirty days at the Hastings Regional Center, the Lincoln Regional Center, the Norfolk Regional Center, or the Nebraska Psychiatric Institute, (b) the first ten dollars per day of the unpaid cost for each of the first thirty days at the Beatrice State Developmental Center, and (c) the first three dollars per day of the unpaid costs for each day after the first thirty days at any such institution, (2) the balance of the un-

paid cost shall be borne by the state, and (3) the county in which the patient resides shall be credited by the Director of Public Institutions for amounts collected from such patient or his relative in excess of the portion of such costs borne by the state."

From July 1, 1969, through June 30, 1975, the DPI periodically submitted itemized billings to Douglas County for its portion of the unpaid costs of patient care as defined in § 83-376, and these billings were routinely paid by Douglas County.

On July 1, 1975, general control of the Nebraska Psychiatric Institute was transferred from the Department of Public Institutions to the Board of Regents of the University of Nebraska under the provisions of 1975 Neb. Laws, L.B. 466. Section 3 of that act is now Neb. Rev. Stat. § 83-305.01 (Reissue 1976), which provides: "Control of all functions of the Nebraska Psychiatric Institute is hereby transferred from the Department of Public Institutions to the Board of Regents of the University of Nebraska. The titular head of the Nebraska Psychiatric Institute shall be known as the director and he shall have the same powers, authority, and duties as prescribed for the superintendents of the other state hospitals described in section 83-305 and, for the purpose of carrying out the functions of the titular head of the Nebraska Psychiatric Institute, director and superintendent shall mean one and the same person. The director shall be under the jurisdiction of the Chancellor of the Medical Center, shall report to the Board of Regents through the President of the University, and shall be responsible for the administration and the preparation of its budget."

NPI continued to admit patients from Douglas and other counties as before, and to look to the county to reimburse the Board of Regents for a portion of the costs of treating indigent residents of the county. Administrators of the university were uncertain about the effect of 1975 Neb. Laws, L.B. 466, on NPI's right to collect reimbursement from the counties under § 83-376.

Based upon its budgets for previous years, NPI's budget for the 1975-76 fiscal year was set up so that 71 percent of the budget of NPI was supported by the State of Nebraska and 29 percent of the support came from revenues generated from services to patients. After July 1, 1975, NPI therefore billed the counties 29 percent of its full charges per patient, after adjustments were made for third-party coverage and the patient's own ability to pay.

In December 1975 NPI's hospital administrator wrote to the director of public welfare and the clerk of the District Court of Douglas County explaining NPI's revised billing procedure and enclosing billings from July 1, 1975, through September 30, 1975. On March 4, 1976, NPI sent billings to the chief deputy county clerk of Douglas County enclosing copies of NPI's billings for services rendered to residents of Douglas County for the months of July through December 1975. The aggregate amount of the billings was $100,199.93.

On June 1, 1976, Douglas County issued a warrant to NPI for $100,199.93 in satisfaction of the billings. The warrant was paid and credited to the account of NPI on June 16, 1976.

On September 22, 1977, Douglas County made demand upon the Board of Regents for a refund of the $100,199.93. The demand was denied.

NPI has continued to render patient care to indigent residents of Douglas County and has continued to submit billings based upon the same formula used in compiling the 1975 billings. Subsequent billings have been denied by Douglas County and an action is presently pending in the District Court for Lancaster County by the Board of Regents against Douglas County for billings during the period of January 1, 1976, through February 28, 1978.

On July 9, 1980, following trial and the submission of briefs in the present case, the District Court found in favor of Douglas County and entered judgment against the Board of Regents in the sum of $100,199.93,

plus interest from June 16, 1976. This appeal followed.

Douglas County takes the position that although § 83-376 specifically requires the county of a patient's residence to pay specified portions of the costs of patient care in certain designated institutions, the inclusion of the Nebraska Psychiatric Institute in that statute was impliedly repealed on July 1, 1975. The argument is that the transfer of control of the Nebraska Psychiatric Institute from the Department of Public Institutions and the deletion of NPI from the list of state institutions and state hospitals under the control of the Department of Public Institutions impliedly repealed the specific designation of the Nebraska Psychiatric Institute in § 83-376. In essence, the argument is that the Legislature simply forgot to amend § 83-376 but really intended to remove any county liability for patients treated at the Nebraska Psychiatric Institute.

Section 83-376 is clear and unambiguous. It mandates payment by the counties of a specified portion of the cost of care given indigent patients at the Nebraska Psychiatric Institute and other named institutions. The section is essentially complete in itself and it does not directly conflict with any other section of the act. This court has consistently held that where the words of a statute are clear and unambiguous, the statute is not open to construction.

In *Bachus v. Swanson*, 179 Neb. 1, 3-4, 136 N.W.2d 189, 192 (1965), we said: "The position seems to be that any statute passed by the Legislature should be open to construction as a matter of course, and that we should not only judicially construe it, but judicially rewrite it. A statute is not to be read as if open to construction as a matter of course. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not

warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute." See, also, *City of Scottsbluff v. Tiemann,* 185 Neb. 256, 175 N.W.2d 74 (1970).

The basic foundation for the argument of the county assumes that the Legislature did not intend to impose a portion of indigent patient costs in mental hospitals upon counties except where treatment was in state hospitals or public institutions under the control of the Department of Public Institutions. That assumption is unfounded. Other portions of the relevant statutory provisions effectively demonstrate a contrary intent.

Neb. Rev. Stat. § 83-306(3) (Reissue 1976) provides that the mental health board may commit mentally ill dangerous persons to the Douglas County Hospital or *"other public or private"* hospitals with acute psychiatric care facilities under specified conditions. The section then provides: "The county and state shall contribute toward the payment of the costs of such commitment, as defined in section 83-376, in an amount which would have been paid if such mentally ill dangerous person had become a patient and received care and treatment at a state hospital described in section 83-305; *Provided,* that the state's cost of care for such mentally ill dangerous person shall not exceed the individual cost as defined in section 83-365." The explicit language of this statute clearly demonstrates an intent to extend the liability of counties for treatment of mentally ill patients in many more institutions than those specified in § 83-376.

Under the facts and circumstances of the present case, Douglas County was liable for the treatment of indigent mentally ill patients at the Nebraska Psychiatric Institute from July 1 to December 31, 1975, in accordance with the terms of § 83-376. The NPI billed Douglas County for such services in the sum of $100,199.93 and that amount was voluntarily paid by Douglas County. The record establishes that the amount

of the bill was not computed in accordance with the specific provisions of the statute. The record does not establish what the charges would have been if computed in accordance with the statutory requirements, nor does it show whether the amount paid was more or less than the amount due under § 83-376.

Douglas County made no claim that costs were not accurately or reasonably determined, nor that the share of costs allocated to the counties was excessive, but brought this action for reimbursement on the theory that the entire amount paid was an overpayment because there was no legal liability. In view of our holding that § 83-376 applied to the charges made and paid, it is apparent that the county's right to recover rests on proving that the amount paid was in excess of the amount actually due. By voluntarily paying the bill submitted by NPI, Douglas County at least raised a presumption that the bill was valid and the amount correct. The authorities generally agree that when governmental officials, with full knowledge of all the facts pertaining to a claim, allow and pay it, the action is held to be at least presumptively correct and is frequently termed conclusive. See 17 McQuillin, Municipal Corporations § 48.11 (3d ed. 1968).

Courts have generally held that parties suing to recover an alleged overpayment on a contract have the burden of proving the amount of the overpayment. See *Hersch Buildings, Inc. v. Steinbrecher*, 198 Neb. 486, 253 N.W.2d 310 (1977). Under the circumstances of this case Douglas County had the burden of proving an overpayment and the amount of reimbursement to which it was entitled because of the alleged overpayment. This it did not do.

The judgment of the District Court is reversed and plaintiff's cause of action is dismissed.

REVERSED AND DISMISSED.

WHITE, J., participating on briefs.

BRODKEY, J., concurs in the result.