JAMES D. HILL AND KENNETH L. IDEEN, IN PERSON AND FOR ALL PERSONS SIMILARLY SITUATED, APPELLANTS, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

330 N.W.2d 471

Filed February 18, 1983. No. 81-669.

J. Murry Shaeffer of Shaeffer Law Offices, P.C., for appellants.

William F. Austin, City Attorney, and William G. Blake, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

The plaintiffs, James D. Hill and Kenneth L. Ideen, brought this class action on behalf of all presently employed Lincoln police officers and firefighters. In their petition they challenged the withholding of certain amounts from police officers' and firefighters' pay as contributions to their pension fund. The District Court found these deductions taken to be appropriate under the relevant statutes, and dismissed the amended petition. From this action the plaintiffs have appealed, contending generally that the trial court erred in finding that the word "salary" had no clear definition in public employee pension law and in determining that the city's interpretation of the word "salary" was a practical interpretation of the statute.

The facts are not in dispute. All police officers and firefighters are entitled to a basic pay based on job classification and experience, according to a "schedule of pay ranges" set by ordinance. This pay plan is based on a 40-hour week for police officers and a 56-hour week for firefighters. In addition, such employees are paid various amounts for

overtime, college credits, and holiday service, as the case may be.

The pension plan for cities of the primary class, which includes the City of Lincoln, was established in its present form in 1963. Neb. Rev. Stat. §§ 15-1001 et seq. (Reissue 1977). It provides that 7 percent of each employee's "salary" shall be contributed to the pension fund (§ 15-1007.01 (Cum. Supp. 1982)), and upon retirement or otherwise qualifying for pension benefits under the plan, each individual shall be paid benefits of 54 percent of the "regular pay" of such individual (§ 15-1001 (Cum. Supp. 1982)). The term "regular pay" is defined in § 15-1001.01(1) (Cum. Supp. 1982) as follows: "Regular pay shall mean the average pay of a firefighter or police officer for the three years preceding the date such firefighter or police officer elects to retire or his or her death, whichever is earlier."

According to the testimony of the retired finance director of the City of Lincoln, it had been the practice in administering the pension plan to deduct 7 percent of each officer's or firefighter's "total gross pay," including base pay, overtime pay, college pay, and all other supplements to base pay. In turn, benefits were computed on the basis of 54 percent of the yearly average of this same "total gross pay" over the last 3 years preceding retirement or death.

It is the contention of the plaintiffs that the statutory term "salary" means only "basic pay," whereas the term "regular pay" includes "basic pay" and also all extra compensation for overtime, holiday service, college credits, etc. In other words, they insist that deductions are to be based on the lesser pay and benefits on the greater. By this action the plaintiffs seek the return of any contributions taken in excess of 7 percent of regular, basic pay, i.e., those deductions taken from overtime pay, holiday pay, college pay, etc., for the 4-year period immediately preceding the filing of their petition. Any claim to deductions taken prior to that 4-year

period would be barred by the statute of limitations. Unfortunately, that date does not appear in the record presented to us and will have to be determined on remand of the case as hereinafter ordered.

The City of Lincoln has always taken the position that both terms mean the same, and it has consistently withheld contributions on the "total gross pay" and paid benefits on the same basis.

The District Court found that the term "salary" is unclear, or, in other words, ambiguous, and permitted parol evidence in an effort to construe the terms of the statute. Testifying in addition to the finance director and the two plaintiffs were an actuary dealing specifically in pension plans, the personnel administrator of the City of Lincoln, and a member of his department.

The two "experts," the actuary and the personnel administrator, testified generally that the word "salary" has no definite or static meaning when used in plans such as the one under consideration. In addition, the finance director, whose duty it was to administer the pension plan, interpreted the law to require that contributions and benefits both be made on "total gross pay."

The plaintiffs contend that in defining "salary" under §§ 15-1001 et seq., we are controlled by the definition of such word as contained in the pension plan for firefighters of cities of the *first class*, Neb. Rev. Stat. §§ 35-201 et seq. (Cum. Supp. 1982). Section 35-203.01 provides that such firefighters shall contribute an amount "equal to five per cent of his or her salary." Section 35-206 requires that "such pension shall be at least fifty per cent of the amount of salary such retiring firefighter is receiving at the time he or she goes upon such pension list." Finally, under the terms of § 35-201(5), "salary shall mean the base rate of pay, excluding overtime, callback pay, clothing allowances, and other such benefits." The plaintiffs thus argue that because "salary" is defined for cities of the first class as base pay only

for purposes of both contributions and benefits, cities of the primary class must follow the same definition where the word "salary" is used for the purpose of determining contributions. However, urge the plaintiffs, when it comes to benefits, the phrase "regular pay," because it is defined as "average pay . . . for . . . three years" means total gross pay, i.e., basic, overtime, holiday, college, etc.

We do not agree that we are so limited. Although the Legislature often feels compelled to define terms used to adequately express the purpose of a particular legislative act, such definitions do not change the common meaning of words used in matters disconnected therewith, unless the same are adopted by reference. *Moffitt v. State Automobile Ins. Ass'n,* 140 Neb. 578, 300 N.W. 837 (1941).

Of necessity, we must be guided by several well-defined rules in our examination and construction of this statutory scheme. Where words of a statute are plain and unambiguous, no interpretation is needed to ascertain their meaning, and in the absence of anything to indicate the contrary, words will be given their ordinary meaning. *County of Douglas v. Board of Regents,* 210 Neb. 573, 316 N.W.2d 62 (1982). A sensible construction will be placed upon a statute to effectuate the object of legislation, rather than a literal meaning that would have the effect of defeating the legislative intent. *PPG Industries Canada Ltd. v. Kreuscher,* 204 Neb. 220, 281 N.W.2d 762 (1979). Whether words are ambiguous is a question of law for the court. *R. A. Hanson Co. v. Aetna Ins. Co.,* 26 Wash. App. 290, 612 P.2d 456 (1980).

In *Halpin v. Nebraska State Patrolmen's Retirement System,* 211 Neb. 892, 320 N.W.2d 910 (1982), the meaning of the term "final average monthly salary" was at issue. However, that case was decided on other grounds and is of no help in solving the specific problem with which we are here presented.

The Random House Dictionary of the English Lan-

guage offers the following definitions of the key words involved: *salary* "a fixed compensation periodically paid to a person for regular work or services, esp. work other than that of a manual, mechanical, or menial kind . . . Syn. See pay"; *pay* ". . . 25. remuneration, emolument, fee, honorarium, income allowance. PAY, WAGE OR WAGES, SALARY, STIPEND, EARNINGS are terms for amounts of money or equivalent benefits, usually given at a *regular* rate or at *regular* intervals, in return for services" (emphasis supplied); *regular* "1. usual, normal, customary . . . 2. evenly or uniformly arranged . . . 3. characterized by fixed principle, uniform procedure, etc.: *regular income.*"

We conclude that the words are not ambiguous and that "salary," when used to determine the amount of contributions to be made by the employee, means regular, basic pay. By the same token, "regular pay," when used to ascertain the amount of benefits due, means regular, basic pay, modified only by the requirement that the figure shall be computed by a 3-year average, rather than employing the precise figure existing as of the date of computation of such benefits.

To include such items as overtime pay and holiday pay within the definition of "regular pay" would place the amount of an employee's retirement income as dependent upon the vagaries of the calendar or the occurrence of natural or manmade disasters. Additionally, it makes no sense at all to interpret this retirement program in such a way as to require contributions on the basis of a smaller figure and benefits on a larger one. As stated in *Policeman's and Fireman's Retirement Fund of City of Ashland v. Richardson,* 522 S.W.2d 452, 453 (Ky. App. 1975), "It is axiomatic that there is no such thing as 'free money.' " We cannot conclude that the Legislature intended such an absurd result as that contended for by the plaintiffs.

The judgment of the District Court is reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

CLINTON, J., not participating.

WHITE, J., concurring.

Briefs were filed and this case was at issue prior to the announcement of our decision in *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982). Also at issue in that case was the meaning of the term "final average monthly salary." We held in *Halpin* that the manner of computing the pension was a contractual right as to persons employed before 1979 and the right to the pension computation was protected against unconstitutional impairment.

We do not have before us, as we did in *Halpin*, evidence with respect to representations made to prospective firemen and policemen of the City of Lincoln as to future pension benefits after completion of a required period of service, nor do we have before us evidence that such manner of computation of pension benefits was relied on by such employees in the hiring process, or in the negotiating process incident to collective bargaining. What we have done in this case is to merely interpret words. We do not decide the issues raised in *Halpin*. Those issues remain for another day.