REQUESTED BY: Senator Vard Johnson Nebraska State Legislature 2108 State Capitol Lincoln, Nebraska 68509
Dear Senator Johnson:
You have asked for our opinion in regard to the following matter: `whether or not LB 285 requires county governments to reduce their expenditure budgets by the amount of dollars they are relieved from paying when the state takes over the former county medicaid function.'
You ask this question because of LB 212, now pending, which will require counties to reduce their combined receipts budget base by an amount equal to the sum to be picked up by the state in welfare costs.
LB 285 was passed by the Eighty-Sixth Legislature, First Session 1979. It is now codified as Neb.Rev.Stat. § 77-3412
through 77-3430 (Reissue 1981). As you point out in your letter, during the 1982 legislative session, LB 522 was passed by the Legislature. That bill, which will become effective July 1, 1983, eliminates county responsibility for contribution to the medicaid costs for county inhabitants. At the current time counties are required to provide 14 percent of such costs by statute.
You indicate in your letter that certain county officials have told you that they interpret the political subdivision's Budget Limitation Act of 1979 to require counties to reduce its budget by an amount equal to the money it will no longer be required to pay by virtue of the provisions of LB 522. They point to the last sentence of Neb.Rev.Stat. 77-3426
(Reissue 1981) which provides:
 Any political subdivision that has its authority to levy a tax or cause a tax to be levied reduced by operation of state law shall reduce the combined receipts base for the ensuing year by the amount of the reduced receipts.
We do not believe that this provision is applicable to this sort of situation.
In interpreting statutes, several rules are applicable. Among those are that a statute is not to be read as if open to construction as a matter of course, Douglas County v.The Board of Regents of the University of Nebraska,210 Neb. 573, 316 N.W.2d 62 (1982). In the absence of anything to indicate the contrary, words in a statute must be given their ordinary meaning. Regland v. Norris Public PowerDistrict, 208 Neb. 492, 304 N.W.2d 55 (1981). And, of course, statutes that are in pari materia are to be read together.
Receipts from local tax sources, receipts from state tax sources, and combined receipts are defined respectfully in Neb.Rev.Stat. §§ 77-3419, 77-3420, and 77-3421 (Reissue 1981). Respective local tax sources include funds received from taxes the governing body is authorized to levy. State tax sources are defined to include funds received, the original source of which is a tax or taxes imposed or levied by the State of Nebraska, and combined receipts include the total of funds received by political subdivisions from local, state, and federal tax sources. Federal tax sources are defined in § 77-3435 as funds received from the federal government for use for general and noncategorical purposes.
The combined receipts base budget defined in Neb.Rev.Stat. § 77-3422 is defined as
 That amount that is the anticipated combined receipts of a political subdivision for the current fiscal year, or that amount that would have been the anticipated combined receipts of a political subdivision for the current fiscal year if the current fiscal year's anticipated receipts would have been increased by seven percent above the anticipated combined receipts of the political subdivision for the prior fiscal year.
Neb.Rev.Stat. §§ 77-1601 and 77-1627 (Reissue 1981) provide the basis of taxing authority for counties for general welfare purposes. Section 77-1601 in part provides:
`each county shall first levy a tax sufficient to enable the county board to provide medical, surgical, and hospital care for needy persons of the county.' Section 77-1627 provides:
`The county boards of the various counties in this case may, at their option, levy an annual tax of not to exceed three and five-tenths cents on each one hundred dollars upon the actual value of all taxable property in such county, except intangible property, for the relief of unemployed and indigent persons.' And finally, § 68-104 as amended by LB 522 and LB 602, Eighty-Seventh Legislature, Second Session 1982, now appearing in the 1982 Supplement, in part provides:
`except that the county board of each county shall furnish such medical service as may be required for the poor of the county who are not eligible for other medical assistance programs.
As we are required to do in reading these statutes together, we believe the following conclusions apply:
1. The county continues to have authority to tax for welfare purposes.
2. Neither LB 602 nor LB 522 have in any way affected the county's authority to levy a tax or cause a tax to be levied for these purposes.
3. The funds for such purposes are funds derived from local tax sources.
In applying these conclusions to the statutory language existing in Neb.Rev.Stat. § 77-3426 cited above, we believe that the Legislature has not caused the authority to levy a tax or cause a tax to be levied to be reduced by virtue of LB 602 or LB 522. It is thus, at least arguable that counties in calculating their 7 percent increase, could utilize the combined receipts base budget including the sums which were levied for purposes of paying the 14 percent portion required of counties prior to the effective date of LB 522, as a part of that calculation. The net effect of this authority would be to allow the counties to continue to raise the same number of dollars from local tax sources after the assumption by the state of these expenses as they had previously raised, but to apply those sums to other functions. The requirement of § 77-3426 is a change in the authority to levy or cause a tax to be levied before a county must reduce its combined receipts base. That is not the case here since the ability to levy still exists. It is therefore our opinion that the Budget Limitation Act would not require the counties to reduce their expenditures by the amount of dollars they will be relieved from paying when the state takes over the medicaid function.
Sincerely yours, PAUL L. DOUGLAS Attorney General Patrick T. O'Brien Assistant Attorney General