RICHARD SPILINEK AND HILDA SPILINEK, HUSBAND AND WIFE, APPELLEES, V. ALVIN R. SPILINEK AND ELLEN SPILINEK, HUSBAND AND WIFE, APPELLANTS.

337 N.W.2d 122

Filed July 29, 1983. No. 82-524.

Robert E. Wheeler of Stowell & Wheeler, P.C., for appellants.

O. Wm. VonSeggern, P.C., of Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellees.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

Plaintiffs-appellees, Richard Spilinek and Hilda Spilinek, husband and wife, brought an action against Richard's nephew and his wife, Alvin R. Spilinek and Ellen Spilinek, to settle a disputed boundary by placing it at the true line as determined by survey. They also prayed that a lawful division fence be erected on that line. The defendants-appellants counterclaimed and prayed that the boundary be fixed at a certain fence line. The trial court fixed the boundary at the true line, ordered defendants to remove, at their sole cost, the fence erected by them on plaintiffs' land, directed that each side pay one-half of the cost of plaintiffs' survey, and directed that the parties share equally the cost of erecting a lawful division fence at the true line. We affirm as modified.

The action is a special one brought under Neb.

Rev. Stat. § 34-301 (Reissue 1978). Such cases are tried under the equity jurisdiction of the District Court and appealed in conformity with the rules of equity. As such, we review the record de novo and reach an independent conclusion without reference to the conclusion reached by the trial court; except, however, that where credible evidence is in conflict we give weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying. *Hardt v. Short-Line Irr. Dist.*, 214 Neb. 612, 335 N.W.2d 292 (1983); *Cofer v. Kuhlmann*, 214 Neb. 341, 333 N.W.2d 905 (1983); *Spilinek v. Spilinek*, 212 Neb. 811, 326 N.W.2d 170 (1982); Neb. Rev. Stat. § 25-1925 (Reissue 1979).

In accordance with the foregoing rules we determine that the plaintiffs own the northern 40-acre tract of land. The defendants own the contiguous southern tract, which extends beyond the eastern boundary of plaintiffs' land. The northern tract has been owned by plaintiffs continuously since 1936; the defendants have owned the southern tract since December of 1980. Prior thereto it had been owned, since the 1930s, by various members of the Marshalek family. The Marshaleks and plaintiffs, unlike the defendants and plaintiffs (see, also, *Spilinek v. Spilinek, supra*), got along well with each other. It had been the custom of the plaintiffs and the Marshaleks to erect temporary fences from time to time extending from the southeast to the southwest cornerposts of plaintiffs' land. In the spring of 1975 Martin Marshalek removed the rotted southeast cornerpost which plaintiff Richard Spilinek and his son Roland later replaced. In doing so Richard and Roland made no particular effort to locate the replacement post exactly where the original southeast cornerpost had been, as no attempt was being made to establish a boundary. The purpose was only to erect something to which a fence might be tied. Their concern at that time was to make certain that they did not encroach upon the Marshaleks' land and

to place the post approximately where it had been. The southwest cornerpost rotted out in approximately 1974. Thereafter the west ends of the temporary fences were tied to one of Richard's gateposts. Some time prior to his purchase of the land Alvin had discussed with Richard the fact that he (Alvin) wished to erect "half a fence." Richard replied that when Alvin had made the purchase Alvin should see Richard and "we'll put the fence in." In May of 1981 the defendant Alvin, without any further discussion with Richard and without causing any survey to be made, erected one-half of the subject fence and tied it to the southeast cornerpost which had been replaced by Richard and his son. In August of that year Alvin became aware that plaintiffs had caused a survey to be made, but nonetheless erected the second half of the fence without reference to that survey.

Defendants assign as error the determinations (1) that the boundary should be established along the true line and not along the existing fence line, and (2) that defendants are liable for one-half the cost of plaintiffs' survey. Defendants also imply the court erred in determining they should bear the cost of removing the fence and that each party should share equally the cost of constructing a lawful fence on the true line.

The essence of defendants' contention is that the "fence line" has been recognized and acquiesced in by the parties and their grantors for more than 10 consecutive years, and, therefore, it, and not the true line, establishes the boundary between plaintiffs' and defendants' land. They cite in support of that contention § 34-301; *Shirk v. Schmunk*, 192 Neb. 25, 218 N.W.2d 433 (1974); and *McGowan v. Neimann*, 139 Neb. 639, 298 N.W. 411 (1941). The statute, in pertinent part, provides: "Either the plaintiff or defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recog-

nized and acquiesced in by the parties or their grantors for a period of ten consecutive years . . . ." *Shirk v. Schmunk, supra,* was an action to quiet title to accretion land, brought under the pertinent statute, wherein we held the fact that a permanent fence, constructed as a boundary line between the two properties, had been in continuous existence for more than 10 years established that plaintiffs' predecessor, who claimed ownership of all the land up to the fence, had obtained title to the disputed property by adverse possession. *McGowan v. Neimann, supra,* establishes the scope of § 34-301 to contemplate actions to determine disputed boundaries of real estate whether the boundaries were known at one time and lost, or otherwise.

*McGowan* does not assist in the factual analysis required by this case. Defendants' reliance upon *Shirk* is misplaced. *Shirk* was resolved under the theory of adverse possession. We have held that the rule of recognition and acquiescence embodied in § 34-301 is separate and distinct from the theory of adverse possession. *Hakanson v. Manders,* 158 Neb. 392, 63 N.W.2d 436 (1954). Therein, this court indicated that in order for the estoppel created by recognition and acquiescence to operate, there must be an assent, by words, conduct, or silence, in a line as the boundary. We stated therein that the act of placing a row of trees on one's own property, even under the mistaken impression that the plantings were on the boundary line, did not of itself establish a mutual recognition and acquiescence in the mistaken line as the boundary. In *Bender v. James,* 212 Neb. 77, 321 N.W.2d 436 (1982), we recognized that the doctrine of acquiescence involves more than a mere establishment of a line by one party and the taking of possession by him; it involves the idea that the other party, with knowledge of the line so established and the possession taken, assents thereto as the boundary. We found therein that changing the direction of crop rows where there had never been a boundary dis-

pute and where the parties' predecessors in title had always gotten along with one another did not constitute notice of the establishment of a boundary line prejudicial to the interests of one of the parties and an acquiescence thereto. We therefore denied a claim of ownership based upon acquiescence. In *Hausner v. Melia*, 212 Neb. 764, 326 N.W.2d 31 (1982), we stated that in order to claim a boundary line by acquiescence both parties must have knowledge of the existence of a line as the boundary.

The record before us does not demonstrate that plaintiffs and the defendants' predecessors in title considered the stringing of temporary fences from the replaced southeast cornerpost to establish the boundary line of their respective properties. The trial court was therefore correct in establishing the boundary at the true line as determined by the survey.

The situation is otherwise, however, with respect to assessing one-half the cost of plaintiffs' survey to defendants. We find no authority for such assessment, and counsel have directed us to none. Plaintiffs' argument that the language of Neb. Rev. Stat. § 34-103 (Reissue 1978), that "Any landowner who shall erect a division fence may demand and collect by civil suit from such adjoining landowner one half the reasonable value of such division fence," authorizes the trial court's action is imaginative, but without merit. The reasonable value of a division fence cannot be said to include the cost of determining where the division fence should be located. No interpretation is needed to ascertain the meaning of plain and unambiguous statutes; in the absence of anything to indicate the contrary, words used in a statute will be given their ordinary meaning. *Hill v. City of Lincoln*, 213 Neb. 517, 330 N.W.2d 471 (1983); *County of Douglas v. Board of Regents*, 210 Neb. 573, 316 N.W.2d 62 (1982).

Since defendants have erected a fence on plaintiffs' land, it is obvious they must bear the cost of

removing it. See *George Rose Sodding & Grading Co., Inc. v. City of Omaha*, 187 Neb. 683, 193 N.W.2d 556 (1972), *appeal on remand* 190 Neb. 12, 205 N.W.2d 655 (1973), stating that the cost of removing sewage pumped without permission onto plaintiff's property was an element of plaintiff's damages.

The above-cited portion of § 34-103 disposes of defendants' claim that the trial court erred in requiring them to pay one-half the reasonable value of the division fence which it directed be erected in accordance with Neb. Rev. Stat. § 34-102 (Reissue 1978), which provides in part: "When two or more persons shall have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them . . . ."

We therefore affirm the trial court's judgment but modify it by striking therefrom the assessment to defendants of one-half the cost of plaintiffs' survey.

AFFIRMED AS MODIFIED.

McCOWN, J., concurs in the result.