KELLOGG COMPANY, A DELAWARE CORPORATION, APPELLEE, v. FRED A. HERRINGTON, NEBRASKA STATE TAX COMMISSIONER, AND THE STATE OF NEBRASKA, DEPARTMENT OF REVENUE, APPELLANTS.

343 N.W.2d 326

Filed January 6, 1984. No. 82-825.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellants.

Larry A. Holle and Scott D. Kelly of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This appeal involves an interpretation of Nebraska's version of the Uniform Division of Income for Tax Purposes Act (Uniform Act), Neb. Rev. Stat. §§ 77-2735 to 77-2752 (Reissue 1981), as it applies to the Nebraska corporate franchise tax, Neb. Rev. Stat. § 77-2734(2) (Reissue 1981). The case comes to us on a stipulation of facts. We find that the appellee, the Kellogg Company, is a multistate corporation, incorporated in Delaware, headquartered in Battle Creek, Michigan, and engaged in the business of manufacturing and selling food products. The

company has American plant facilities located in Memphis, Tennessee; San Leandro, California; Omaha, Nebraska; and Battle Creek, Michigan. It also has 17 foreign subsidiaries located throughout the world. During the audit periods involved in this protest, 1968 through 1972, Kellogg stipulated that it received dividends as well as income in the form of "know-how fees" from its foreign subsidiaries. These fees are payments for the use of trade secrets, technical information, trademark rights, technical assistance, etc., developed by the Kellogg Company. We are not told as to the amount received or what percentage of the total information and know-how used by the foreign subsidiaries was obtained from the parent corporation.

The audit division of the Department of Revenue performed an audit of Kellogg's records. As a result of that audit, the department issued notices of deficiency determination on February 12, 1974. The notices were issued for the following years and amounts: 1968, $22,927.89; 1969, $26,563.85; 1970, $40,355.38; 1971, $37,581.19; and 1972, $35,768.63. For reasons which are not at all made clear to the court, this matter remained under consideration by the Nebraska Department of Revenue until October 25, 1979, when Tax Commissioner Fred A. Herrington issued his findings and order. The deficiency assessment was affirmed in the total amount of $203,001, which included interest updated through August 31, 1979. The Kellogg Company then appealed to the district court for Lancaster County, Nebraska, as provided by Neb. Rev. Stat. § 77-27,127 (Reissue 1981).

When the Kellogg Company was first advised of the deficiency by the Department of Revenue, it protested principally on the basis that it was error for the State to include in the definition of income for the Kellogg Company dividends, interest, and technical fees received by the Kellogg Company from its foreign subsidiaries. Before the matter was ulti-

mately decided by the Department of Revenue, Kellogg filed an addendum to its protest, maintaining that, when apportioning income between Nebraska and elsewhere, Nebraska was required to consider the property values, sales, and payroll of Kellogg on a worldwide basis.

After a hearing, based principally upon the stipulation of facts and certain documentary evidence not relevant to our discussion, the trial court concluded that worldwide apportionment, using worldwide income and property values, sales, and payroll, was required. The court reversed the deficiency determination against Kellogg and remanded the matter to the Tax Commissioner for further proceedings consistent with the court's order.

The Department of Revenue has now appealed to this court, assigning the following as error: (1) That the trial court erred in finding that combined reporting of the income of an affiliated group of corporations, including foreign corporations not subject to federal taxation, is permitted by Nebraska statutes; (2) That if such combined reporting is permissible under Nebraska law, then the trial court erred in finding that it was required; (3) That the trial court erred in failing to find that dividends and other payments made to a parent corporation by its foreign subsidiaries are business income of the parent corporation, subject to apportionment to states in which the parent does business; and, finally, (4) That the trial court erred in failing to find that Kellogg had failed to meet its burden of proof, and therefore erred in remanding the case to the Tax Commissioner for further proceedings. We believe that the trial court was correct with regard to the matter of property values, sales, and payroll, but wrong as to income, and for that reason we affirm in part and in part reverse and remand.

We turn first to an examination of the Uniform Act. It is noted by the Illinois court in the case of *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 108,

417 N.E.2d 1343, 1347 (1981): "A unitary business operation is one in which there is a high degree of interrelationship and interdependence between, typically, one corporation, which generally is a parent corporation, and its corporate subsidiaries or otherwise associated corporations, which group is usually engaged in multistate, and in some cases in international, business operations. Because of this integrated relationship, which is reflected in all phases of the business operations, it is extremely difficult, for purposes of taxation, to determine accurately the measure of taxable income generated within a State by an individual corporation of the unitary group which is conducting business in the State. Typically, the corporation's transactions and the income derived from them actually represent the business efforts of the individual corporation, plus efforts of other and possibly all members of the unitary business operation. As a result, the claimed income of each member of the group standing alone does not, in a real sense, reflect the conducting of a unitary business operation because the income is not attributable solely to the effort of the particular corporation."

As a result of this phenomenon, the National Conference of Commissioners on Uniform State Laws developed the "Uniform Division of Income for Tax Purposes Act." 7A U.L.A. 93 et seq. (1978). The purpose of the act is to assist states in attempting to allocate to a particular state a proportion of the unitary business income attributable to that particular state, and therefore subject to taxation.

The formula, designed and derived by the Uniform Act for purposes of taxing unitary business, has now gained wide acceptance and, at last count, has been substantially adopted by 23 states, including Nebraska. While the parties to this action raise no issue as to the application of this act, it is clear that Kellogg conducts a unitary business operation subject to the Uniform Act.

The U.S. Supreme Court has been called on a number of times to pass upon various aspects of the "unitary business" principle and formula apportionment. See, *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 102 S. Ct. 3103, 73 L. Ed. 2d 787 (1982); *F. W. Woolworth Co. v. Taxation & Revenue Dept.*, 458 U.S. 354, 102 S. Ct. 3128, 73 L. Ed. 2d 819 (1982); *Exxon Corp. v. Wisconsin Dept. of Revenue*, 447 U.S. 207, 100 S. Ct. 2109, 65 L. Ed. 2d 66 (1980); *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980); *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 98 S. Ct. 2340, 57 L. Ed. 2d 197 (1978); *General Motors v. Washington*, 377 U.S. 436, 84 S. Ct. 1564, 12 L. Ed. 2d 430 (1964); *Butler Bros. v. McColgan*, 315 U.S. 501, 62 S. Ct. 701, 86 L. Ed. 991 (1942); *Bass, etc., Ltd., v. Tax Comm.*, 266 U.S. 271, 45 S. Ct. 82, 69 L. Ed. 282 (1924); *Underwood T'writer Co. v. Chamberlain*, 254 U.S. 113, 41 S. Ct. 45, 65 L. Ed. 165 (1920).

As we have noted, Kellogg initially argued that Nebraska could not apportion income between Nebraska and elsewhere and collect a tax in Nebraska on income which may not have been earned in Nebraska. They have now, of necessity, abandoned that view. In a recent decision involving the Uniform Act as applied to the California tax, the U.S. Supreme Court in *Container Corp. of America v. Franchise Tax Bd.*, ____ U.S. ____, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983), approved the California method of imposing a unitary tax on a multinational corporation doing business in California. In approving the California formula the U.S. Supreme Court rejected the taxpayer's contention that it had a right to exclude income of its subsidiaries, including dividend income, nonbusiness interest income, and gains on sales of assets not related to the unitary business. In doing so the U.S. Supreme Court said at ____, 103 S. Ct. at 2950: "For the reasons we have just outlined, we conclude that California's application of the unitary business principle to appellant

and its foreign subsidiaries was proper, and that its use of the standard three-factor formula to apportion the income of that unitary business was fair. This proper and fair method of taxation happens, however, to be quite different from the method employed both by the Federal Government in taxing appellant's business, and by each of the relevant foreign jurisdictions in taxing the business of appellant's subsidiaries.'' The formula used by California, pursuant to statute, includes all of the income of the parent and its subsidiaries, including foreign subsidiaries, and uses to apportion this income the worldwide value of the taxpayer's property, payroll, and sales. That is the formula urged upon us by Kellogg.

With that brief background we then turn to an examination of the Nebraska act for purposes of attempting to determine what the proper application in Nebraska should be. In doing so, we are reminded that there are certain basic rules of construction which must be followed by the court. '' 'A statute is not to be read as if open to construction as a matter of course.' '' *County of Douglas v. Board of Regents*, 210 Neb. 573, 577, 316 N.W.2d 62, 65 (1982). ''Where words of a statute are plain and unambiguous, no interpretation is needed to ascertain their meaning, and in the absence of anything to indicate the contrary, words will be given their ordinary meaning.'' *Hill v. City of Lincoln*, 213 Neb. 517, 521, 330 N.W.2d 471, 474 (1983). Moreover, ''[i]t is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute.'' *Gaughen v. Sloup*, 197 Neb. 762, 765, 250 N.W.2d 915, 917 (1977). In the construction of a statute which is clear and unambiguous, courts cannot supply missing language, and it is not within the court's power to read into a statute meaning which the clear language does not warrant.

See *Omaha Public Schools v. Hall*, 211 Neb. 618, 319 N.W.2d 730 (1982).

Before proceeding to examine Nebraska's version of the Uniform Act, we must first look at the section of the Nebraska statutes which imposes the tax. The Uniform Act merely apportions the tax, and it does not impose any tax obligation. The applicable taxing statute is § 77-2734. Subsection (1) of the statute has no application because it applies only to a corporation doing business within this state whose business consists exclusively of foreign commerce or interstate commerce, or both. The stipulation in this case is not to that effect, and presumably the Kellogg Company does business both within and without this state. For this reason the provisions of § 77-2734(2) have application. That subsection reads in part as follows: "[T]here is hereby imposed a franchise tax on each corporation or any other entity taxed as a corporation under the Internal Revenue Code according to or measured by its entire net income derived from all sources within this state for the taxable year at the rates imposed under subsection (1) of this section. *For the purposes of this subsection the taxpayer's entire net income shall be its federal taxable income derived from sources within this state* as determined pursuant to sections 77-2735 to 77-2749 without regard to the modification referred to in section 77-2741 . . . ." (Emphasis supplied.) For purposes of understanding this section it is important to note that a Nebraska taxpayer's "entire net income" is determined by the amount of income reported by the taxpayer on its federal tax report. For our purposes we need not concern ourselves with the modification referred to in § 77-2741.

In essence, there is imposed a franchise tax on a corporation at a prescribed rate times the corporation's *federal taxable income* apportioned in accordance with the Uniform Act. At this point we should note that this is a significant difference from the California code involved in *Container Corp. of*

*America v. Franchise Tax Bd.*, ____ U.S. ____, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983). The California law imposes the tax not upon the taxpayer's *federal* taxable income but, rather, upon its *gross* income, subject to certain modifications. Under the California code, therefore, the tax is imposed upon *all* of the income of the taxpayer, and may include income not required to be reported in the taxpayer's *federal* income tax return. Therefore, while it may be proper in California to use worldwide income as the tax base, the tax base in Nebraska is defined by statute to be "federal taxable income."

Having determined the tax base upon which the tax is imposed, we turn then to Nebraska's version of the Uniform Act to determine the proper method of apportionment. The pertinent section is § 77-2743. For reasons not entirely clear the Nebraska Legislature chose to deviate from the Uniform Act and divide the section into two parts. The first part is applicable if the taxable income derived from sources within the state is "separate and distinct." The record in this case does not reflect separate and distinct income, and therefore subsection (1) is inapplicable. Consequently, the provisions of § 77-2743(2) apply. That section reads as follows: "All business income shall be apportioned to this state as follows: . . . (2) If the portion of taxable income derived from sources within Nebraska cannot be readily separated from the portion derived from sources without Nebraska, it shall be determined by multiplying the taxpayer's entire taxable income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three." The act then goes on to define the three factors. Section 77-2744 defines the property factor as "a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of *all* the taxpayer's

real and tangible personal property owned or rented and used during the tax period." (Emphasis supplied.)

The State argues to us that, in using that factor, we should only take into account the taxpayer's real and tangible personal property owned, rented, or used during the tax period in the United States, and therefore we should not, as urged by Kellogg, consider all of the taxpayer's real and tangible property wherever found. We believe, however, that the language of the statute is clear and unambiguous. The statute says "all." Few words in the English language are as clear in meaning as is "all," unless it is the word "everywhere," which we shall discuss in a moment.

In *State v. Babcock*, 22 Neb. 33, 37, 33 N.W. 709, 710 (1887), we said: "[T]he word 'all' includes the whole." And in *Haverly v. Elliott*, 39 Neb. 201, 206, 57 N.W. 1010, 1011 (1894), we said: "The word 'all' does not mean some, nor a part, but means the whole . . . ." And, further, in *Consolidated Freightways Corp. v. Nicholas*, 258 Iowa 115, 121, 137 N.W.2d 900, 904 (1965), the Iowa Supreme Court noted: "The word 'all' is commonly understood and usually does not admit of an exception, addition or exclusion." See, also, 73 Am. Jur. 2d *Statutes* § 244 (1974).

The Legislature, if it says so, may be authorized to limit the factor in question to the United States, if by so doing the formula remains fair and equitable. See *Container Corp. of America v. Franchise Tax Bd.*, *supra*. But what the Legislature may do is not the same as what it has in fact done, and the language of § 77-2744 appears to be clear beyond question. *All* must mean everywhere.

This becomes even clearer when one looks at § 77-2747, the payroll factor. That section reads: "The payroll factor is a fraction, the numerator of which is the total amount paid in this state during the tax period by the taxpayer for compensation, and the denominator of which is the total compensa-

tion paid *everywhere* during the tax period." (Emphasis supplied.) To suggest, as the State does, that everywhere means everywhere in the United States is to attempt to give a meaning to the word not generally recognized nor generally considered in its common meaning. The word "every" is synonymous with "all" and means all the separate individuals which constitute the whole. See, 15 Words and Phrases 792 (perm. ed. 1950); *Geary v. Parker*, 65 Ark. 521, 47 S.W. 238 (1898); *Knox Jewelry v. Cincinnati Ins. Co.*, 130 Ga. App. 519, 203 S.E.2d 739 (1974). *Everywhere* must therefore mean from all places.

Likewise, § 77-2749, in defining "sales factor," provides: "The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer *everywhere* during the tax period." (Emphasis supplied.) What we have said with regard to the payroll factor applies with regard to the sales factor. Therefore, reading the definitions of the three factors, one must come to the conclusion that if, indeed, the Uniform Act is applied, then the taxpayer is required to report, and the Department of Revenue is required to consider, the property factor, the payroll factor, and the sales factor of the taxpayer from all of its operations, both within and without the United States.

This results, of necessity, in a formula different than California's. This is due, however, to the difference in the Nebraska taxing statute and not due to the application of the Uniform Act. For purposes of § 77-2743 the taxpayer's entire taxable income must be as defined by § 77-2734(2), which limits it to the taxpayer's *federal* taxable income. This includes dividends and interest and fees paid to it by its foreign subsidiaries, but does not include the income of its foreign subsidiaries. The property factor, payroll factor, and sales factor must include the taxpayer's worldwide items. It may very well be,

and probably is true, that this does not provide the State with the result which it had hoped to obtain by adopting the Uniform Act. The difficulty, however, is that the Nebraska franchise tax "piggybacks" on the federal income tax in order to arrive at its principal base. By attempting to combine the "piggybacking" of the federal income tax with the provisions of the Uniform Act, it may be that the State realizes the smallest tax possible. This may be unfortunate, and not what the Legislature intended, but it is, in fact, what was accomplished. To the extent that the trial court included worldwide figures for property values, payroll, and sales, it was correct. To the extent that the trial court included worldwide income, it was in error.

The Department of Revenue argues that, regardless of the claims made by Kellogg, the taxpayer simply failed to meet its burden of proof, and therefore this appeal should be dismissed. In support of that position the State cites the provisions of Neb. Rev. Stat. § 77-2781 (Reissue 1981), which provide in part as follows: "In any proceeding before the Tax Commissioner the burden of proof shall be on the taxpayer . . . ." Admittedly, Kellogg failed to provide either the Tax Commissioner or the trial court with sufficient figures to compute the correct tax. However, this is not relevant in this particular appeal.

There are several other provisions of the Nebraska statutes which must be considered in arriving at a determination in this case. Section 77-27,127 reads in part as follows: "Any final action of the Tax Commissioner, if the person aggrieved thereby elects not to appeal first to the State Board of Equalization and Assessment, shall be subject to judicial review as provided in sections 84-917 to 84-919, as though it were a final decision of the State Board of Equalization and Assessment. The review provided by this section shall be the exclusive remedy available to any taxpayer and no other legal

or equitable proceedings shall issue to prevent or enjoin the assessment or collection of any tax imposed under the provisions of sections 77-2701 to 77-27,135." Further, Neb. Rev. Stat. § 77-27,128 (Reissue 1981) provides in part: "The review provided by sections 77-27,126 and 77-27,127 shall be the exclusive remedies available to any taxpayer for the review of the action in respect to the assessment of a proposed deficiency." Therefore, to determine what the authority of the district court is in this case in light of the limited evidence provided by stipulation, we must turn to Neb. Rev. Stat. §§ 84-917 to 84-919 (Reissue 1981). Subsection 84-917(6) reads in part as follows: "The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the agency decision is: . . . (b) In excess of the statutory authority or jurisdiction of the agency; . . . (d) Affected by other error of law." In view of the fact that we have determined as a matter of law that the formula used by the Department of Revenue and approved by the Tax Commissioner was in excess of statutory authority and contrary to law, it appears to us that the clear language of § 84-917 required the trial court to remand this case to the Tax Commissioner for a determination in accordance with the proper formula. Likewise, on appeal under § 84-918, we must direct the district court to take such action. That is not to say that the burden of proof with regard to factual matters does not remain with the taxpayer. It is simply to recognize that in this case we do not reach the factual dispute because of the errors of law committed by the Tax Commissioner in interpreting the applicable statutes. When the case returns to the Tax Commissioner, Kellogg will bear the burden of producing evidence sufficient to establish that a determination made by the Tax Commissioner is not in accordance with law, if it disagrees with his determination.

For these reasons, therefore, the decision of the district court is in part affirmed and in part reversed, and the cause is remanded with directions to order the Tax Commissioner to recompute the taxes for the years in question in accordance with this decision.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.