REQUESTED BY: Senator Peter Hoagland Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Hoagland:
This is in reply to your inquiry of March 15, 1984, concerning LB 744, as amended by the Legislature and advanced to final reading the same date. Inasmuch as an official final reading copy is not yet available, this opinion is based upon a copy of LB 744 which purports to reflect amendments adopted as of March 15, 1984, and is attached hereto.
We will restate the questions in your letter and answer them in the order presented.
1. Does the bill prohibit the utilization of electronic video lottery devices, which have commonly been referred to as `video slot machines,' to effectuate local lotteries as are now in operation in the City of Bellevue and other political subdivisions as of January 1, 1985?
ANSWER: Yes.
It is an established and accepted rule of statutory construction that a statute will generally be given its plain and ordinary meaning and will be open to construction only if it is ambiguous. Douglas County v. Board of Regents,210 Neb. 573, 316 N.W.2d 62 (1982).
LB 744 is, in our opinion, clear and unambiguous that (1) a gambling device, as defined in Neb.Rev.Stat. 28-1101(5), as amended, includes the kinds of machines described in your question, and (2) a lottery, as defined in 28-1101(6), as amended, will not include machines as described in your question. Since existing statutes (§§ 28-1116
and 28-1116.01 (Supp. 1983)) authorize lotteries only to be conducted by governmental subdivisions and the definition of lottery does not include these machines, the bill prohibits the use of such electronic video devices to carry out the lottery when authorized by the voters to be conducted by a city or other governmental subdivision.
2. Does the bill effectively place a freeze on any additional authorizations by political subdivision on the utilization of video slot machines on the effective date of the act?
ANSWER: The critical language pertinent to this question and questions 3 and 4 of your letter is contained in section 2 of LB 744 which provides:
 "Any county, city, or village which has authorized, established, or is conducting a lottery which uses any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device on the effective date of this act may conduct such lottery only within the boundaries of such county or the corporate limits of such city or village until January 1, 1985, at which time such lottery shall be terminated."
(Emphasis added.)
The use of the word `or' in the second line of section 2 above may cause some doubt. This is so because the word `or,' while not always used in the disjunctive, is usually so considered and that is its commonly accepted meaning.State ex rel. Finigan v. Norfolk Livestock Sales Co.,178 Neb. 87, 132 N.W.2d 302 (1964).
The stated intent of section 2 as it appeared before the Legislature in discussion of section 2 of LB 744 on March 15, 1984, is as follows:
 SENATOR HOAGLAND: What exactly do you intend in using the language, `authorized, established or conducting a lottery which uses any mechanical gaming device and so forth.'
 SENATOR V. JOHNSON: Okay, my intention is very simple. Number (1), that the people, that prior to the effective date of 744, which if it passes with the emergency clause means sometimes next week, prior to that time, the people have voted to permit a governmental operated lottery. Secondly, the city council or the county board, as the case may be, has decided that one of the kinds of lotteries which is going to offer is the video lottery. Third that the county board or the city council as the case may be has issued contracts to establish such a lottery. That is it.
 SENATOR HOAGLAND: So if I understand you correctly, the governing board of the political subdivision has to actually have entered into a contract with a company that provides these electronic slot machines or video slot machines prior to the effective date of the act which if passed with the emergency clause will be the day after the governor's signature.
SENATOR V. JOHNSON: That is correct.
Since the language of section 2 is somewhat ambiguous, a court could utilize the above discussion to ascertain intent. However, since the section has a time limit it is doubtful the courts could be effectively utilized in such a short time.
A rewording of section 2 more in keeping with the stated intent would simplify enforcement. Therefore, we conclude that the present language does not effectively place a freeze on additional authorizations of such devices.
3. Does the bill effectively require those political subdivisions that have authorized lotteries using such machines to conduct them only within their boundaries?
ANSWER: Yes.
The answer to this question is also contained in section 2 of the bill quoted above. We think it is clear that this effectively limits the use of the devices to the boundaries of the governmental subdivision involved.
4. Does the bill prohibit the use and operation of video slot machines in any locality other than those set out above, and if so, would law enforcement officials be authorized to seize such machines and prosecute the owner/operators thereof.
ANSWER: Yes.
The bill in conjunction with existing gambling statutes, such as Neb.Rev.Stat. § 28-1102 (Reissue 1979) promoting gambling, and § 28-1107 (Reissue 1979) possession of a gambling device, effectively outlaws the use of video slot machines, except as to the governmental subdivisions discussed under number 2.
Law enforcement officers have authority to search for and seize property used to violate the laws or which is evidence of such a violation, and to prosecute the owner, operator, possessor, transporter and others when such person or persons know the device will be used to advance unlawful gambling activity, or participate as a player.
Respectfully submitted,
PAUL L. DOUGLAS Attorney General
Mel Kammerlohr Assistant Attorney General